## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BIGHORN RESTAURANTS, LLC, | ) | Bankr. Case No. 23-11919-MER |
| SUMMIT RESTAURANT HOLDINGS, | ) | Bankr. Case No. 23-11921-MER |
| LLC; EMPIRE RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11922-MER |
| HEARTLAND RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11924-MER |
| ATLANTIC STAR RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11925-MER |
| and SUMMIT RESTAURANT | ) | Bankr. Case No. 23-11926-MER |
| DEVELOPMENT, LLC, | ) | |
| | ) | **(Jointly Administered under** |
| Debtors-in-Possession. | ) | **Bankr. Case No. 23-11919-MER)** |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| | ) | **[Pleading Applies to All Cases]** |
| | ) | |

---

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE
BIDDING PROCEDURES; (II) APPROVING BID PROTECTIONS; (III)
APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND RELATED NOTICES; (IV)
SCHEDULING THE BID DEADLINE, THE AUCTION AND SALE HEARING; (V)
APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (VI)
GRANTING RELATED RELIEF**

---

The above captioned Debtors and Debtors in Possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby move (the "Motion") this Court for an order (I) establishing bidding procedures (the "Bidding Procedures"), (II) approving bid protections for a stalking horse bidder ("Bid Protections"), (III) establishing procedures for assumption and assignment of certain executory contracts and related notices, (IV) scheduling the bid deadline, auction, if any, and sale hearing, (V) approving the form and manner of notice

thereof, and (V) granting related relief.  In further support of this Motion, the Debtors respectfully state as follows.

### Background

1.      On May 4, 2023, (the "Petition Date"), the Debtors separately filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado (the "Court").

2.      On May 5, 2023, the Court entered the *Order Granting Motion for Order Directing Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only and Entry of Related Relief* [Docket No. 35] (the "Joint Administration Order") directing joint administration of the Debtors' related chapter 11 cases for procedural purposes only.  The Debtors' chapter 11 cases are being jointly administered under *In re Bighorn Restaurants, LLC*, lead bankruptcy case number 23-11919-MER.

3.      The Debtors are authorized to operate their business and manage their properties as debtors-in-possession under §§ 1107(a) and 1108. No creditors' committee is appointed in the Chapter 11 Cases by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

4.      Together, the Debtors constitute one of the largest current franchisees of Hardee's restaurants.  The Debtors formerly operated over 145 Hardee's restaurants, recently closed 39 restaurants and currently operate 108 Hardee's restaurants (the "Restaurants").  The  Restaurants span the states of Alabama, Florida, Georgia, South Carolina, Kansas, Missouri, Wyoming, and Montana.  The Restaurants are operated by various of the following Debtors Empire, Heartland, Bighorn, and Atlantic Star.[1]

---

[1] As of the Petition Date, Summit Development does not have any Restaurant operations.

5.       A description of the Debtor's business, the reasons for filing this chapter 11 case and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the *Declaration of Daniel F. Dooley in Support of First Day Relief* [Docket No. 9] (the "First Day Declaration"), which the Debtor hereby adopts and incorporates as if fully set forth herein.

## Introduction

6.       The Debtors seek to maximize the value of their estates for the benefit of their creditors by conducting an auction for the sale of substantially all of their assets.  As will be further described in their *Motion For Entry of Order: (I) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially All of the Debtors' Assets; (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to 11 U.S.C. §§ 363(b), 363(f) and 363(m); and (III) Granting Related Relief* which the Debtors will soon file herein (the "Sale Motion"), the Debtors have entered into an Asset Purchase Agreement (the "APA") with ARC Burger, LLC  ("Stalking Horse Bidder") to purchase substantially all of the Debtors' assets subject to this Court's approval.  As further described in the Sale Motion, the Stalking Horse Bidder has been provided with certain customary protections (subject to Court approval) which include, among other things, a break-up fee in the amount of $351,000 plus three percent (3%) of the amount by which the aggregate consideration received by the Debtors for the assets sold by them pursuant to the Bidding Procedures exceeds $11,700,000  (the "Break-up Fee") and an expense reimbursement of up to $150,000 (the "Expense Reimbursement", and together with the Break-Up Fee the "Bid Protections")  for its reasonable, out of pocket costs and attorneys' fees incurred by Stalking Horse Bidder in connection with submitting the Stalking Horse Bid and its due diligence in in connection therewith.  As requested herein and in the Sale Motion, upon the entry of a Court Order authorizing the sale of substantially all the Debtors' assets to a bidder other

than the Stalking Horse Bidder, the Debtors seek authorization to pay to the Stalking Horse Bidder the Break-Up Fee and Expense Reimbursement (i.e., the Bid Protections) from the proceeds of such sale. The Debtors are engaged in negotiations with multiple parties, and file this Motion to advance the bidding process and schedule an auction to secure the highest or best bid for the benefit of their estates.

7.      In February, 2023, the Debtors retained Brookwood Associates to market the Debtors' assets (the "Prepetition Marketing Process").  With the Prepetition Marketing Process in mind, and in an effort to maximize value for all stakeholders, the Debtors have developed postpetition marketing, bidding and auction procedures (the "Postpetition Sale Process") for the orderly marketing and sale of the Debtors' business. The Bidding Procedures are designed to promote a competitive and robust bidding process and are intended to generate the greatest level of interest in the Debtors' businesses.

8.      The Bidding Procedures provide the Debtors with flexibility to solicit proposals, negotiate transactions, select qualified bidders, hold an auction, and proceed to consummate a potential sale transaction whether through a Bankruptcy Code 363 sale (a "Transaction"), all while protecting the due process rights of all interested parties and ensuring that there is a full and fair opportunity to review and consider proposed transactions.

## **Relief Requested**

9.      By this Motion, the Debtors request entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**:

> i.      authorizing and approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1, in connection with the Transaction;

ii.   scheduling an auction (if necessary) in connection with the sale of the Debtors' Assets (the "Auction") and a final hearing to consider approval of the proposed Sale (the "Sale Hearing");

iii.   authorizing and approving the form of (A) notice of the Sale, Bidding Procedures, Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale Notice"); (B) notice to each relevant Counterparty (as defined below) to an Assumed Contract (as defined below) regarding the Debtors' potential assumption and assignment of such contract and the amount necessary to cure any defaults thereunder (the "Cure Claims"), substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "Potential Assumption and Assignment Notice"); and (C) notice to be published in national edition of USA today regarding the sale of the Debtors' Assets free and clear of all liens, claims and interests ("Free and Clear Notice") substantially in the form attached to the Bidding Procedures Order as Exhibit 4.

iv.   authorizing and approving procedures for the assumption and assignment of the certain executory contracts and unexpired leases and the determination of Cure Claims with respect thereto (collectively, the "Assumption and Assignment Procedures"); and

v.   granting related relief including without limitation the Bid Protections for the Stalking Horse Bidder.

**Jurisdiction and Venue**

10.   The United States Bankruptcy Court for the District of Colorado (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and D.C. Colo. L. Civ. R. 84.1. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.   The bases for the relief requested herein are sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules

6003 and 6004, and Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Colorado (the "Local Rules").

## **The Bidding Procedures**

13.     Prior to commencing these Chapter 11 Cases, the Debtors engaged Brookwood Associates and undertook an extensive marketing process that has generated substantial interest in the business. As mentioned above ARC Burger, LLC has been selected by the Debtors as the Stalking Horse Bidder herein as further described in the Sale Motion.  The Debtors have retained Brookwood Associates to, among other things, assist the Debtors in a marketing process for potential additional bidders for the Debtors' assets.  Consistent with that process, the Debtors now file this Motion seeking approval of Bidding Procedures to continue their marketing efforts and complete a sale of their assets or equity in a manner that maximizes the value of the Debtors' assets.

14.     Preserving value for the benefit of the Debtors' estate depends in large part on the Debtors proceeding swiftly to completion of a sale.  The Bidding Procedures are designed to—and the Debtors believe the Bidding Procedures will actually operate to—maximize the likelihood of an acceptable bid for the benefit of enterprise-wide stakeholders.

15.     Brookwood Associates, in consultation with the Debtors have developed a list of more than ninety parties whom they believe may be interested in, and whom are believed would have the financial resources to consummate a purchase of substantially all of the Debtors' assets. The list of parties includes strategic investors and financial investors (collectively, the "Contact Parties").  Since being engaged in early 2023, Brookwood Associates contacted over 40 Contact Parties and provided them with a generic teaser.  Sixteen of the initial Contact Parties executed confidentiality agreements and the Debtors received a total of four letters of interest.  The Contact

Parties may include parties whom the Debtors or their advisors previously contacted regarding a transaction, regardless of whether such parties expressed any interest at such time in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate. Since the filing of these cases, Brookwood Associates has commenced contact with the remaining fifty or more Contact Parties that were not previously contacted.

16.     With the assistance of Mr. Dooley and the Debtors' management team, Brookwood Associates has established a data room for prospective purchasers. Brookwood Associates will continue to aggressively market the Debtors' assets during the Chapter 11 Cases to the Contact Parties and any others who may have interest in the Debtors' assets.

**Stalking Horse Bidder and Bid Protections**

17.     A summary of the proposed sale is set out below:

| | |
|---|---|
| **Purchase Price** | The Purchase Price is $11,700,000.00 plus the Lease Adjustment Amount and additional amounts if additional locations are added in accordance with Schedule 2.1(d) (the "Purchase Price"). |
| **Acquired Assets** | Substantially all of the Debtor's Assets which includes not less than 53 and up to 73 restaurants, with the potential to add up to 15 additional restaurants. The Acquired Assets includes Assumed Contracts and Assumed Leases, Fixed Assets, Inventory, Permits, Change Fund, Prepaid Expenses, Goodwill and other Intangibles, Point of Sale Equipment, Warranties, Tax Records, Advertising Materials, Avoidance Actions related to Assumed Contracts and Assumed Leases, Acquired Business Information |
| **Assumed Liabilities** | All Liabilities related to Property Taxes imposed upon or assessed directly against the Acquired Assets attributable solely to any tax period (or portion thereof) beginning after the Closing Date; |

|  | All (i) store or customer credits, sales promotions, rebates, coupons, and loyalty programs, and (ii) returns of goods or merchandise, customer prepayments and overpayments, customer refunds, credits, reimbursements and related adjustments in the ordinary course of business with respect to goods or merchandise; |
|  | All Liabilities, to the extent arising from or after the Closing, except, in the case of Taxes, to the extent attributable solely to any tax period (or portion thereof) beginning after the Closing Date, with respect to or relating to the ownership or operation of Buyer of any of the Acquired Assets or Relating to the Business; |
|  | All Liabilities related to Transfer Taxes related to the Transaction; and employee benefits, compensation or other arrangements arising from Buyer's employment of Transferred Employees on or after the Closing. |
| **Excluded Assets** | Excluded Assets |
| **Closing** | The Closing shall occur upon the satisfaction of the conditions set forth in Article 7 of the Form APA. Closing is subject to, among other conditions, entry of the Sale Order by July 28, 2023and shall occur no later than August 14, 2023. |
| **Deposit** | $585,000.00. |
| **Representations and Warranties** | The Acquired Assets will be sold on an "As Is" and "Where Is" basis with customary representations and warranties as to title and ownership and as to the conduct of the business prior to closing. |
| **Termination** | The APA may be terminated in various circumstances, including the failure to obtain approval of the Bid Protections by June 2, 2023, the failure to have a Sale Order by July 28, 2023 or the failure to close on the transaction by August 14, 2023. |
| **Agreements with Management** | N/A |

## The Bidding Procedures Order

### A.    The Bidding Procedures.

18.    To optimally and expeditiously solicit, receive, and evaluate bids in a fair and efficient manner, the Debtors have developed and proposed the Bidding Procedures, attached as **Exhibit 1** to the Bidding Procedures Order, to govern the Postpetition Sale Process.  The Debtors designed the Bidding Procedures to encourage all entities to put their best bids forward and to maximize the value of the Debtors' estate.  The following describes the salient points of the Bidding Procedures:[2]

      i.    **Participation Requirements.**

      a)    To receive due diligence information, including full access to the Debtors' electronic data room and additional non-public information regarding the Debtors, a party interested in consummating a Transaction (a "Potential Bidder") should deliver (or have delivered) to each of (i) Brookwood Associates, investment banker to the Debtors, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, GA 30305, Attn: Amy Forrestal (AF@brookwoodassoictes.com); and (ii) Markus Williams Young Hunsicker LLP, 1775 Sherman Street, Suite 1950, Denver Colorado 80203 Attn: James Markus (jmarkus@markuswilliams.com), counsel to the Debtors; (collectively, the "Debtors' Advisors"), the following documents (collectively, the "Preliminary Bid Documents"):

         i.    an executed Confidentiality Agreement, to the extent not already executed; and

         ii.    such other documentation requested by and acceptable to the Debtors of the Potential Bidder's financial capacity to close a proposed Transaction.

      b)    Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors will determine (in consultation with the

---

[2] This summary is qualified in its entirety by the Bidding Procedures attached as **Exhibit 1** to the Bidding Procedures Order.  All capitalized terms that are used in this summary but not otherwise defined herein shall have the meanings in the Bidding Procedures.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

Consultation Parties) and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid (as defined below) and participate in the Auction, as applicable, and will provide copies of any such notices to the Notice Parties. Except as otherwise determined in the Debtors' business judgment, only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "Acceptable Bidder") may submit Bids. The Debtors shall file a notice in the Bankruptcy Court designating any stalking horse bidder or any replacement stalking horse bidder (the "Stalking Horse Bidder") and such Stalking Horse Bidder will be deemed to have already been determined to be an Acceptable Bidder.

c)   If the Stalking Horse Bidder is approved by the Court at the Bidding Procedures hearing, then the asset purchase agreement proposed by such Stalking Horse Bidder will serve as the form asset purchase agreement and if no Stalking Horse Bidder is approved by the Court, the Debtors will provide a form asset purchase agreement (collectively, the "Form Documents"). Brookwood Associates will make the Form Documents available to any Acceptable Bidders. Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Acceptable Bidder and its contemplated transaction.

ii.   **Qualifying Bid Deadline**. An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in .pdf or similar format) so as to be **actually received** on or before **July 10, 2023, at 5:00 p.m**. (**prevailing Mountain Time**) (the "Bid Deadline") to the Debtors' Advisors. Debtors' Advisors shall provide copies of each Bid to the Consultation Parties within one calendar day after receipt.

iii.   **Bid Requirements**. Each Bid by an Acceptable Bidder must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements"):

a)   Purpose. Each Acceptable Bidder must state if the Bid is an offer by the Acceptable Bidder to purchase assets or equity, including the percentage of the new interests to be purchased, if any, and which executory contracts and unexpired leases the Acceptable Bidder seeks to have assumed and assigned as part of the Transaction

b)      Purchase Price.  Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, including, for example, certain liabilities to be assumed by the Acceptable Bidder (the "Purchase Price");

c)      Deposit.  Each Bid must be accompanied by a cash deposit in the amount equal to 5% of the aggregate value of the cash and non- cash consideration of the Bid to be held in one or more escrow accounts on terms acceptable to the Debtors (the "Deposit").

d)      Marked Agreement.  Each Bid must include a form of APA acceptable to the Debtors; each Bid must include a marked version of the applicable Form Documents, in each case, together with the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Acceptable Bidder proposes to effectuate the Transaction (collectively, the "Transaction Documents").  Any modifications to the Transaction contemplated by the Form Documents must be in form and substance acceptable to the Debtors.  Notwithstanding anything to the contrary in the Bid Procedures or the Form APA, an Acceptable Bidder may bid on any of the Debtors' assets and may assume or elect not to assume the franchise agreement(s) between Debtors and CKE Restaurant Holdings, Inc. ("CKE").

e)      Committed Financing.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction (in consultation with the Consultation Parties), that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, or shall have covenants and conditions acceptable to the Debtors (in consultation with the Consultation Parties).

f)      Contingencies; No Financing or Diligence Outs.  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

g)   <u>No Bidding Protections</u>.  Each Bid (other than the Stalking Horse Bid) must disclaim any right to receive a fee analogous to a breakup fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. By submitting its Bid, each Bidder (other than the Stalking Horse Bidder) is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including pursuant to section 503(b) of the Bankruptcy Code.

h)   <u>Identity</u>.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation.  Each Bid should also include contact information for the specific person(s) and counsel whom the Debtors' Advisors should contact regarding such Bid.

i)   <u>Authorization</u>.  Each Bid must contain evidence acceptable to the Debtors (in consultation with the Consultation Parties), that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Transaction contemplated in such Bid.

j)   <u>As-Is, Where-Is</u>.  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Transaction prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Transaction or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents; and (iv) the Acceptable Bidder did not engage in any collusive conduct and acted in good faith in submitting its Bid.

k)    <u>Adequate Assurance</u>. Each Bid must contain evidence acceptable to the Debtors in their reasonable discretion (in consultation with the Consultation Parties) that the Acceptable Bidder has the ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Acceptable Bidder's ability to perform future obligations arising under the contracts and leases proposed in its Bid to be assumed by the Debtors and assigned to the Acceptable Bidder, in a form that will permit the immediate dissemination of such evidence to the Counterparties to such contracts and leases (the "<u>Adequate Assurance Information</u>"). Adequate Assurance Information may include: (i) the specific name of the proposed assignee, and the proposed name under which the proposed assignee intends to operate the store if not the current tradename of the Debtors, (ii) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of the applicable contracts and leases; (iii) audited or unaudited financial statements, tax returns, bank account statements or annual reports; (iv) financial projections, calculations, and/or financial pro-formas prepared, if any, in contemplation of purchasing the applicable contracts and leases; (v) the proposed assignee's intended use of the leased premises and a description of the proposed business to be conducted at the premises; (vi) a contact person for the proposed assignee; and/or (vii) any other documentation that the Debtors may further request (in consultation with the Consultation Parties). All Bidders are deemed to consent to the transmission of Adequate Assurance Information to the applicable Counterparties. All Bidders should provide such other and further information reasonably requested by the applicable Counterparty so as to enable such Counterparty to evaluate such Bidder's adequate assurance of future performance.

l)    <u>CKE Consent to Assignment of Franchise Agreement(s)</u>. An Acceptable Bidder is not obligated to, but may, require the assumption and assignment of any franchise agreement(s) between Debtors and CKE in order to submit a Qualified Bid. To the extent an Acceptable Bidder requires the assignment of any franchise agreement(s) between Debtors and CKE Restaurant Holdings, Inc. ("<u>CKE</u>") in its Bid, the Acceptable Bidder shall state whether or not it has the consent of CKE to the assignment of the franchise agreement(s) to the Acceptable Bidder, or its assignee. If consent has not been obtained, but the Acceptable Bidder has commenced the diligence process with CKE, the Acceptable Bidder shall state its understanding of the status of the approval process.

iv.    **Stalking Horse Bid and Initial Overbid**. Each subsequent Bid or combination of Bids must propose a purchase price greater than the sum of (i) the value of the Stalking Horse Bid, as determined by the Debtors; (ii) the Bid Protections and (iii) an initial overbid of not less than $250,000 (which $250,000 is subject to reduction depending on the lot(s) of assets being sold) (the "Initial Overbid").

v.    **Right to Credit Bid**.  Any Qualified Bidder who has an undisputed, valid and perfected lien on any assets of the Debtors' estate (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured. The Stalking Horse Bidder shall be entitled to credit bid the amount of its Bid Protections as part of any Bid it may make at the Auction.  The Confidentiality Agreement prohibits any Qualified Bidder from purchasing the position of a Secured Creditor and no such transferee shall be permitted to credit bid.

vi.    **Designation of Qualified Bidders**.  A Bid will be considered a "Qualified Bid," and each Acceptable Bidder that submits a Qualified Bid will be considered a "Qualified Bidder," if the Debtors (in consultation with the Consultation Parties) determine that such Bid:

a)    satisfies the Bid Requirements set forth above, including any required Initial Overbid;

b)    is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid (as defined below), within a time frame acceptable to the Debtors; and

c)    By **July 12, 2023**, the Debtors will notify each Acceptable Bidder whether such party is a Qualified Bidder and shall provide the Consultation Parties a copy of each Qualified Bid.

d)    If any Bid is determined by the Debtors (in consultation with the Consultation Parties) not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three business days after the Bid Deadline.

e)    Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtors, a

Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

f) Notwithstanding anything herein to the contrary, the Debtors (in consultation with the Consultation Parties) reserve the right to work with (1) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline or (2) Qualified Bidders to aggregate two or more Qualified Bid into a single Qualified Bid prior to the conclusion of the Auction. The Debtors (in consultation with the Consultation Parties) reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

g) For the avoidance of doubt, the Stalking Horse Bidder (if approved) is a Qualified Bidder.

vii. **Scheduling the Auction**.

a) The deadline for Qualified Bidders to submit a bid shall be **July 10, 2023** (the "Bid Deadline"). If the Debtors receive two or more Qualified Bids, the Debtors will conduct the Auction to determine the Winning Bidder with respect to the Transaction.

b) No later than one day prior to the Auction, the Debtors, will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, or combined Qualified Bids as determined in the Debtors' business judgment (in consultation with the Consultation Parties) (the "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders and the Consultation Parties. The determination of which Qualified Bid or combination of Qualified Bids constitutes the Baseline Bid and which Qualified Bid or combination of Qualified Bids constitutes the Winning Bid shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of

the Qualified Bid(s) to the Debtors' estate, including, among other things: (a) the number, type, and nature of any changes to the applicable Form Documents requested by the Qualified Bidder; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estate from the Transaction contemplated by the Baseline Bid; (e) the tax consequences of such Qualified Bid; and (f) if seeking the assumption and assignment of any franchise agreements with CKE Restaurants Holdings Inc., whether the consent of CKE Restaurants Holdings Inc. to such assignment has been obtained and if consent has not been obtained, whether the Qualified Bidder has requested consent and the status and timing of when consent is expected (collectively, the "<u>Bid Assessment Criteria</u>").

c) Unless otherwise indicated as provided by the Bidding Procedures Order, the Auction shall take place at **10:00 a.m. (prevailing Mountain Time) on July 14, 2023**, at the offices of Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203, or such later date and time or location as selected by the Debtors. The Auction shall be conducted in a timely fashion according to the following procedures:

viii. **The Auction Process.**

i. <u>Conduct and Form of the Auction</u>. The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. At the Auction, the Debtors intend to offer their assets for sale in four (4) distinctive lots: (i) those properties and stores belonging to the Debtors and located in Georgia and South Carolina; (ii) those properties and stores belonging to the Debtors and located in Missouri and Kansas; (iii) those properties and stores belonging to the Debtors and located in Montana and Wyoming; and (iv) all properties and stores belonging to the Debtors wherever located. The Debtors shall retain a court reporter to transcribe the statements made at the Auction and shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Winning Bid(s).

ii. <u>Attendance at the Auction</u>. Only Qualified Bidders, the Debtors, Cadence Bank, CKE Restaurants Holdings Inc., the Committee, and each of their

respective legal and financial advisors, and any other parties specifically invited or permitted to attend by the Debtors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear in person at the Auction and may speak or bid themselves or through duly authorized representatives.   Except as otherwise permitted by the Debtors, only Qualified Bidders shall be entitled to bid at the Auction.

iii.   <u>Overbids.</u>  "Overbid" means any Bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

a)   <u>Minimum Overbid Increment</u>.  The first Overbid(s) following the Baseline Bid(s) (the "<u>Initial Overbid</u>") shall be in an amount having a value equal to or in excess of $250,000 higher that the first Baseline Bid(s) (which $250,000 is subject to reduction depending on the lot(s) of assets being sold), unless otherwise determined by the Debtors in an exercise of their business judgment (after consultation with the Consultation Parties). Any Bid(s) made subsequent to the Initial Overbid must be made in an amount having a value in excess of at least $100,000 higher than the Prevailing Highest Bid(s) (as defined below) (which $100,000 may be subject to reduction depending on the lot(s) of assets being sold).

b)   <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

c)   <u>Overbid Alterations</u>.   An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estate than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment (in consultation with the Consultation Parties), but shall otherwise comply with the terms of these Bidding Procedures. For the avoidance of doubt, a Qualified Bidder may modify its Bid at the Auction to include the acquisition of additional assets that were not included in its original Bid, provided that the modified Bid meets the minimum required Overbid increment.

d)   <u>Announcing Highest Bid(s)</u>.  Subsequent to each Overbid Round Deadline, and after consulting with the Consultation Parties, the Debtors shall announce whether the Debtors have identified an Overbid or overbids as being higher or otherwise better than the Baseline Bid, in the initial Overbid Round, or, in subsequent rounds,

the Overbid(s) previously designated by the Debtors as the prevailing highest or otherwise best Bid(s) (the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid(s) designated by the Debtors as the Prevailing Highest Bid(s), as well as the value attributable by the Debtors to such Prevailing Highest Bid(s) based on, among other things, the Bid Assessment Criteria.

e)  Consideration of Overbids. The Debtors reserve the right, in consultation with the Consultation Parties, in their business judgment, to adjourn the Auction one or more times, to, among other things, (1) facilitate discussions between the Debtors and Potential Bidders, (2) allow Qualified Bidders to consider how they wish to proceed, and (3) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder(s) has sufficient internal resources or has received sufficient noncontingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.

f)  Closing the Auction. During or prior to the conclusion of the Auction, the Debtors shall have the right, in the exercise of their reasonable business judgment and after consulting the Consultation Parties, to modify or amend the Auction process and procedures as deemed necessary and appropriate by the Debtors. The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in consultation with the Consultation Parties, in their business judgment, to be the highest or otherwise best Qualified Bid(s). Such Qualified Bid(s) shall be declared the "Winning Bid(s)" and such Qualified Bidder(s), the "Winning Bidder(s)," at which point the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid(s). Such acceptance by the Debtors of the Winning Bid(s) is conditioned upon approval by the Court of the Winning Bid(s). For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their fiduciary duties under applicable law. As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid(s).

g)  No Collusion; Good-Faith Bona Fide Offer. Each Qualified Bidder participating at the Auction will be required to confirm on the record

at the Auction that (1) it has not engaged in any collusion with respect to the bidding and (2) its Qualified Bid is a good-faith bona fide offer and it intends to consummate the proposed Transaction if selected as the Winning Bidder.

iv.          **Backup Bidder**.

a)      Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder(s) with the next-highest or otherwise second-best Qualified Bid(s) at the Auction, as determined by the Debtors in the exercise of their business judgment, shall be required to serve as a backup bidder(s) (the "<u>Backup Bidder(s)</u>") until the earlier of (i) thirty (30) days after entry of the Sale Order and (ii) the date of closing of the applicable Transaction (the "<u>Outside Date</u>"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

b)      The identity of the Backup Bidder(s) and the amount and material terms of the Qualified Bid(s) of the Backup Bidder(s) shall be announced by the Debtors, at the conclusion of the Auction at the same time the Debtors announces the identity of the Winning Bidder(s).  Each Backup Bidder(s) shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbids) open and irrevocable until the Outside Date.  Each Backup Bidder's Deposit shall be held in escrow pending the occurrence of the Outside Date.

c)      If any Winning Bidder(s) does not obtain Bankruptcy Court approval or fails to consummate the approved Transaction contemplated by its Winning Bid(s) prior to the Outside Date, the Debtors may select the Backup Bidder(s) as the Winning Bidder(s), and such Backup Bidder(s) shall be deemed a Winning Bidder(s) for all purposes without any further order of the Bankruptcy Court.  The Debtors will be authorized, but not required, to consummate the Transaction contemplated by the Bid(s) of such Backup Bidder(s) without further order of the Court or notice to any party.  In such case, each defaulting Winning Bidder's Deposit shall be forfeited to the Debtors' estate, and the Debtors, on behalf of themselves and their estates, specifically reserve the right to seek all available remedies against the defaulting Winning Bidder(s), including, but not limited to, specific performance.

v.           **Notice Parties**.

a)      Information that must be provided to the "Notice Parties" under these Bidding Procedures must be provided to the following parties:

     i.      The Debtors' Advisors: (a) the financial advisor, Dan Dooley, c/o MorrisAnderson and Associates, Ltd., 55 West Monroe St., Suite 2350, Chicago, IL 60603 (DDooley@morrisanderson.com); (b) Brookwood Associates, investment banker to the Debtors, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, GA 30305, Attn: Amy Forrestal (AF@brookwoodassociates.com); and (c) Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203, Attn: James T. Markus (jmarkus@markuswilliams.com), counsel to Debtors.

     ii.      Office of the United States Trustee, Byron Rodgers Federal Building; 1961 Stout Street, #12-200, Denver, Colorado 80294

     iii.      Counsel to Cadence Bank as senior secured lender, Morris Manning & Martine, LLP, Attn: Frank W. DeBorde, 1600 Atlanta Financial Center, 3343 Peachtree Road, NE, Atlanta, Georgia 30326 (fdeborde@mmmlaw.com);

     iv.      Counsel to CKE Restaurants Holdings, Inc.; DLA PIPER: Attn Richard Chesley, 444 West Lake Street, Suite 900, Chicago, IL 60606 (Richard.chelsey@dlapiper.com); and

     v.      counsel to any statutory committee appointed in these cases.

b)      In addition to being Notice Parties, the following persons: (i) Candence Bank; (ii) a representative the Committee; and (iii) CKE Restaurants Holdings, Inc. shall also be deemed "Consultation Parties." If a Consultation Party becomes a Qualified Bidder, then the Consultation Party shall not be a Consultation Party for so long as such Consultation Party remains a Qualified Bidder.

c)      The Debtors' Advisors will meet weekly with counsel for Cadence Bank to provide Postpetition Sale Process updates.

     vi.      **"As Is, Where Is."**

a)      Consummation of any Transaction will be on an "as is, where is" basis, with all faults and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as

specifically accepted or agreed to by the Debtors.  Except as specifically accepted or agreed to by the Debtors, all of the Debtors' right, title, and interest in and to the respective assets will be transferred to the Winning Bidder free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code, as applicable.  The Debtors are also seeking a finding that the Winning Bidder or Winning Bidders shall not be deemed to be successors to the Debtors for successor liability purposes.

b)    By submitting a Bid, except as specifically accepted or agreed to by the Debtors, each Acceptable Bidder will be deemed to acknowledge and represent that it (A) has had an opportunity to conduct adequate due diligence regarding the Transaction prior to making its Bid, (B) has relied solely on its own independent review, investigation, and inspection of any document, including executory contracts and unexpired leases, in making its Bid, and (C) did not rely on or receive from any party any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Transaction or the completeness of any information provided in connection with the Transaction or the Auction.

vii.    **Reservation of Rights**.  The Debtors reserve the right to modify these Bidding Procedures in their business judgment, in consultation with the Consultation Parties, in any manner that is not inconsistent with prior orders of the Court or applicable law and will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Transaction, including: (i) extending the deadlines set forth in these Bidding Procedures; (ii) adjourning the Auction at the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; and (v) rejecting any or all Bids or Qualified Bids.  Nothing in these Bidding Procedures shall abrogate the fiduciary duties of the Debtors.

viii.    **Consent to Jurisdiction**.  All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction, and enforcement of these Bidding Procedures.

ix.    **Sale Hearing**.  A hearing to consider approval of the Transaction and the sale to the Winning Bidder(s) or Backup Bidder(s) (the "Sale Hearing") will commence on **July [21], 2023 at 10:00 a.m. (prevailing Mountain Time)**.

Any party wishing to object to approval of the Transaction and the sale to the Winning Bidder or Backup Bidder (a "Sale Objection") or wishing to object to the conduct of the Auction (an "Auction Objection") shall, by no later than **July 18, 2023 at 4:00 p.m. (prevailing Mountain Time)**, file and serve its Sale Objection or Auction Objection, as applicable, on the Notice Parties.

Any party failing to timely file a Sale Objection or an Auction Objection, as applicable, will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement for the Transaction.

x. **Return of Deposit**.

a) The Deposit of the Winning Bidder(s) shall be applied to the Purchase Price of such Transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Winning Bidder(s) and the Backup Bidder(s)) on the date that is three (3) business days after the Auction.

b) If any Winning Bidder fails to consummate a proposed Transaction because of a breach by such Winning Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Winning Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates, and the Debtors shall be free to consummate the proposed Transaction with the applicable Backup Bidder(s) without the need for an additional hearing or order of the Court.

19.     Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, and, as such, do not impair the Debtors' ability to consider all qualified bid proposals, and, as noted, preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

**B.     Form and Manner of Notice.**

20.     The Auction shall take place at **10:00 a.m. (prevailing Mountain Time) on July 14, 2023**, at the offices of Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203, or such other date and time as selected by the Debtors.

21.     On or before the date that is twenty-one (21) calendar days prior to the Sale Hearing, in accordance with Bankruptcy Rule 2002(a) and (c), the Debtors (or their agent) shall serve the auction and sale notice (the "Auction and Sale Notice"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 2**, by first-class mail, postage prepaid, upon the Notice Parties and upon all other known creditors of the Debtors.

22.     The Auction and Sale Notice shall indicate that copies of the Motion and the Bidding Procedures can be obtained from the Debtors' counsel.  The Auction and Sale Notice will also indicate the deadline for objecting to the Transaction to the Winning Bidder and the date and time of the Sale Hearing.

23.     The Debtors further submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order, together with service of the Auction and Sale Notice, constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  The Debtors propose that no other or further notice of the Auction shall be required. Accordingly, the Debtors request that the Court approve the form and manner of the notice.

## C.     Assumption and Assignment Procedures

24.     In connection with any Transaction, the Debtors propose to assume and assign to the Winning Bidder(s) the contracts ("Contracts") that the Winning Bidder(s) seeks to assume (the "Proposed Assumed Contracts").  The Assumption and Assignment Procedures will, among other things, notice the counterparties (each a "Counterparty" and collectively, the "Counterparties") of

the potential assumption and assignment of their Contracts and the Debtors' calculation of costs of curing defaults under the Contracts (the "Cure Costs") with respect thereto. Specifically, the Assumption and Assignment Procedures provide that:

    i.    **Assumption and Assignment Notice**: No later than **June 9, 2023**, the Debtors shall file with this Court and serve on the non-Debtors Counterparty to the Proposed Assumed Contracts the Assumption and Assignment Notice, which shall (i) identify the Contracts; (ii) list the Debtors' good faith calculation of Cure Costs with respect to each Contract; (iii) expressly state that assumption or assignment of a Contract is not guaranteed and is subject to the agreement of the Winning Bidder and Court approval; and (iv) prominently display the deadline to file objections to the assumption, assignment, or sale of the Proposed Assumed Contracts. In the event that the Debtors identify Counterparties that were not served with the Assumption and Assignment Notice, the Debtors may subsequently serve such Counterparty with an Assumption and Assignment Notice, and the following procedures will nevertheless apply to such Counterparty; provided, however, that the deadline to file a Cure Objection or Assignability Objection with respect to such additional Counterparty shall be 4:00 p.m. (prevailing Mountain Time) on the date that is 14 days following service of the Assumption and Assignment Notice.

    ii.    **Cure Objections and/or Assignability Objections**

        a)    Deadline. Any Counterparty to a Contract that wishes to object to the potential assumption, assignment, and sale of the Proposed Assumed Contract on any grounds (other than Adequate Assurance Objections, as noted below), including the subject of which objection is either (i) the Debtors' proposed Cure Costs to cure any outstanding monetary defaults then existing under such contract (each, a "Cure Objection") and/or (ii) an objection to the assignability of the Contract, whether on grounds that such contract is not assignable, is not an executory contract or unexpired lease, or otherwise (each, an "Assignability Objection"), shall file with the Bankruptcy Court and serve on the Notice Parties its Cure Objection and/or Assignability Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **June 30, 2023 at 4:00 p.m. (prevailing Mountain Time)**.

        b)    Resolution: The Debtors and a Counterparty that has filed a Cure Objection and/or Assignability Objection shall first confer in good faith to attempt to resolve the Cure Objection and/or Assignability

Objection without Court intervention.  If the parties are unable to consensually resolve the Cure Objection and/or Assignability Objection prior to the commencement of the Sale Hearing, the amount to be paid or reserved with respect to such Cure Objection and the assignability of the Contract shall be determined by the Bankruptcy Court at the Sale Hearing provided that, a Cure Objection may, at the Debtors' discretion, after consulting with the Consultation Parties, the Winning Bidder and the Counterparty, be adjourned (an "Adjourned Cure Objection") to a subsequent hearing.  An Adjourned Cure Objection may be resolved after the closing date of the applicable Transaction; provided that, the Debtors maintain a cash reserve equal to the cure amount the objecting Counterparty believes is required to cure the asserted monetary default under the applicable Contract.  Upon resolution of an Adjourned Cure Objection and subject to the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection may be deemed assumed and assigned to the applicable Winning Bidder, as of the closing date of the applicable Transaction.   All objections to the potential assumption and assignment of the Debtors' right, title, and interest in, to, and under a Contract will be heard at the Sale Hearing, except with respect to an Adjourned Cure Objection as set forth herein.

c)   <u>Failure to Timely Object</u>: If a Counterparty fails to timely file with the Bankruptcy Court and serve on the Notice Parties a Cure Objection and/or Assignability Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Contract (unless such Counterparty has timely filed an Adequate Assurance Objection (as defined below) with respect to the Contract, in which case the Counterparty may only object to the Winning Bidder's adequate assurance) to the Winning Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale.  The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Contract, or any other document, and the Counterparty to the Contract shall be deemed to have consented to the Cure Costs and forever shall be barred from asserting any other claims related to such Contract against the Debtors or any Winning Bidder(s) or their property.

iii.      **Adequate Assurance Objections**.

a)  <u>Deadline</u>:  Any Counterparty to a Proposed Assumed Contract that wishes to object to the potential assumption, assignment, and sale of the Proposed Assumed Contract, the subject of which objection is to the proposed form of adequate assurance of future performance provided by a Winning Bidder(s) or Backup Bidder(s) (who is not the approved Stalking Horse Bidder) with respect to such contract (each, an "Adequate Assurance Objection"), shall file with the Bankruptcy Court and serve on the Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **July 20, 2023 at 4:00 p.m. (prevailing Mountain Time)**.

b)  <u>Resolution of Objections</u>:  The Debtors and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance of the applicable Winning Bidder shall be determined by the Bankruptcy Court at the Sale Hearing.

c)  <u>Failure to Timely Object</u>:  If a Counterparty fails to timely file with the Bankruptcy Court and serve on the Notice Parties an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Proposed Assumed Contract (unless the Counterparty has filed a timely Cure Objection and/or Assignability Objection with respect to the Proposed Assumed Contract, the deadline and procedures for resolution and adjudication of which are set forth above) to the Winning Bidder and forever shall be barred from asserting any objection.  The Winning Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract in accordance with Bankruptcy Code section 365(f)(2)(B), notwithstanding anything to the contrary in the Proposed Assumed Contract, or any other document.

**D.      Publication of Free and Clear Notice**

25.      Within ten (10) days following the entry of the Bid Procedures Order, the Debtors shall cause to be published in the National edition of USA Today a notice (the "Free and Clear Notice") in the form attached to the Bid Procedures Order as Exhibit 4.

E.     **Timeline**

26.     Set forth below for convenience is a chart reflecting the various ***proposed*** deadlines

and dates requested by the Debtors set forth herein and the Bidding Procedures Order:

| Bidding Procedures Hearing | **TBD**, 2023 at 10:00 a.m. prevailing Mountain Time |
|---|---|
| Deadline to File Cure Notice | **June 9, 2023 prevailing Mountain Time** |
| Cure/Assignability Objection Deadline | **June 30, 2023** at 4:00 p.m. prevailing Mountain Time |
| Qualifying Bid Deadline | **July10, 2023** at 5:00 p.m. prevailing Mountain Time |
| Auction | **July 14, 2023** at 10:00 a.m. prevailing Mountain Time |
| Sale Objection Deadline | **July 18, 2023** at 4:00 p.m. prevailing Mountain Time |
| Adequate Assurance Objection Deadline | **July 20, 2023** at 4:00 p.m. prevailing Mountain Time |
| Sale Approval Hearing | **July [21], 2023** at _____ prevailing Mountain Time (or as soon thereafter or before as the Court's schedule permits) |
| Entry of Sale Order Deadline | **July 28, 2023** |
| Sale Closing Deadline | **August 14**, **2023** |

**Basis for Relief**

A.     **The Relief Sought in the Bidding Procedures Order Is in the Best Interests of the Debtors' Estate and Should Be Approved.**

27.     Adoption of the Bidding Procedures is a valid exercise of the Debtors' business

judgment.   Courts have consistently held that a Debtors' business judgment is entitled to

substantial deference with respect to the procedures to be used in selling an estate's assets.  *See,*

*e.g., In re Trilogy Dev. Co., LLC*, No. 09-42219, 2010 Bankr. LEXIS 5636, at *3–4 (Bankr. W.D.

Mo. 2010) (holding that section 363 of the Bankruptcy Code permits the Debtors to sell their assets

if a sound business purpose exists); *In re Channel One Commc'ns, Inc*., 117 BR 493 (Bankr. E.D.

Mo. 1990) (same); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the

Debtors in possession can sell property of the estate . . . if he has an 'articulated business

justification.'" (internal citations omitted)); *see also In re Farmland Indus., Inc*., 294 B.R 855, 881 (Bankr. W.D. Mo. 2003) (holding that courts in this district are reluctant to interfere with corporate decisions unless "it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code"); *In re Integrated Res., Inc*., 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

28.     Maximization of proceeds received by the estate is one of the dominant goals of any proposed sale of estate property.  In the hope of maximizing the value received by the estate, courts typically establish procedures that are intended to enhance competitive bidding by, among other things, setting forth the rules that will govern the auction process.  *See, e.g., In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates"); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc*., 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc*., 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (internal citations omitted)).

29. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the Debtors' assets"); *In re Fin. News Network, Inc*., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

30. The Debtors believe that the proposed Bidding Procedures represent the best avenue for identifying and promoting active bidding from interested and financially capable parties and will maximize the value the Debtors will receive from the Transaction for the benefit of the Debtors' estates. The proposed Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who can demonstrate the ability to close a Transaction. In particular, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

31. The Debtors believe that the proposed Bidding Procedures provide an appropriate framework for expeditiously establishing that the Debtors are receiving the best and highest offer for a Transaction, will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with the controlling legal standard. Accordingly, the Court should approve the Debtors' adoption of the Bidding Procedures as reasonable and appropriate and a valid exercise of the Debtors' business judgment.

**B.**      <u>**The Form and Manner of the Notice Should Be Approved.**</u>

32.      Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to the relief requested herein.

33.      The Debtors submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of notice of the Auction. Nevertheless, the Debtors propose to file on the court docket and serve a notice of entry of the Bidding Procedures Order with a copy of the entered Bidding Procedures Order attached to such notice.

34.      "A proceeding to assume, reject, or assign an executory contract or unexpired lease. . . is governed by Rule 9014." Fed. R. Bankr. P. 6006(a).  Bankruptcy Rule 9014 provides that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a).  The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.  See 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and opportunity for hearing "as [are] appropriate in the particular circumstances.").

35.      The Debtors respectfully submit that the proposed Assumption and Assignment Procedures are appropriate and reasonably tailored to provide appropriate notice and opportunity

for hearing. Accordingly, the Debtors submit that implementation of the Assumption and Assignment Procedures is appropriate in these Chapter 11 Cases and request that the Court approve them.

### Waiver of Bankruptcy Rule 6004(a)

36.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order unless the court orders otherwise." The Debtors request that the Bidding Procedures Order be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

### Reservation of Rights

37.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim, (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estate; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an

admission as to the validity of any particular claim or a waiver of the Debtors' right to subsequently dispute such claim.

### Notice

38.     The Debtors, by and through their undersigned attorney's will provide notice of this motion to: (a) the financial advisor Dan Dooley, c/o MorrisAnderson and Associates, Ltd., 55 West Monroe St., Suite 2350, Chicago, IL 60603  (DDooley@morrisanderson.com); (b) Brookwood Associates, investment banker to the Debtors, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, GA 30305, Attn: Amy Forrestal (AF@brookwoodassociates.com); (c) Office of the United States Trustee, Byron Rodgers Federal Building; 1961 Stout Street, #12-200, Denver, Colorado 80294; (d) Counsel to Cadence Bank as senior secured lender, Morris Manning & Martine, LLP, Attn: Frank W. DeBorde, 1600 Atlanta Financial Center, 3343 Peachtree Road, NE, Atlanta, Georgia 30326 (fdeborde@mmmlaw.com); (e) DLA PIPER: Attn Richard Chesley, counsel for CKE Restaurants Holdings, Inc.; 444 West Lake Street, Suite 900, Chicago, IL 60606 (Richard.chelsey@dlapiper.com); (f) all parties asserting liens against the Debtors' assets; (g) counsel to any statutory committee appointed in these cases; and (h) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  May 11, 2023

MARKUS WILLIAMS YOUNG &
HUNSICKER LLC


_____ */s/ John F. Young* _____
James T. Markus, #25065
John F. Young, #26989
Matthew T. Faga, #41132
William G. Cross, #52952
Lacey S. Bryan, #51908
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: jyoung@markuswilliams.com
Email: mfaga@markuswilliams.com
Email: wcross@markuswilliams.com
Email: lbryan@markuswilliams.com