**<u>Exhibit A</u>**
**Bidding Procedures Order**

}
4874-6313-0466 v.1

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankr. Case No. 23-11919-MER |
| BIGHORN RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11921-MER |
| SUMMIT RESTAURANT HOLDINGS, | ) | Bankr. Case No. 23-11922-MER |
| LLC; EMPIRE RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11924-MER |
| HEARTLAND RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11925-MER |
| ATLANTIC STAR RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11926-MER |
| and SUMMIT RESTAURANT | ) | |
| DEVELOPMENT, LLC | ) | **(Jointly Administered under Bankr.** |
| | ) | **Case No. 23-11919-MER)** |
| Debtor-in-Possession. | ) | |
| | ) | Chapter 11 |

---

**ORDER (I) APPROVING THE BIDDING PROCEDURES; (II) APPROVING BID
PROTECTIONS; (III) APPROVING PROCEDURES FOR ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND RELATED
NOTICES; (IV) SCHEDULING THE BID DEADLINE, THE AUCTION AND SALE
HEARING; (V) APPROVING THE FORM AND MANNER OF NOTICE THEREOF;
AND (VI) GRANTING RELATED RELIEF**

---

Upon the motion (the "<u>Motion</u>") of the above captioned Debtors and Debtors in possession

(the "<u>Debtors</u>") for the entry of an order (this "<u>Order</u>"): (a) authorizing and approving the bidding

procedures attached hereto as **<u>Exhibit 1</u>** (the "<u>Bidding Procedures</u>"),[1] (b) approving certain Bid

Protections as described herein, (c) establishing certain dates and deadlines including the Bid

Deadline, the date of the Auction, if any, and the Sale Hearing, (d) approving the manner of notice

of the Bidding Procedures and Auction, if any, (e) approving the Assumption and Assignment

Procedures, and (f) granting related relief; all as more fully set forth in the Motion; and upon the

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion or Bidding Procedures,
as applicable.

}
4874-6313-0466 v.1

First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and D.C. Colo. L. Civ. R. 84.1 of the District Court for the District of Colorado; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion, having reviewed any objections filed in connection therewith (the "Objections"), and having heard the statements in respect of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

}
4874-6313-0466 v.1

B.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and D.C. Colo. L. Civ. R. 84.1 of the District Court for the District of Colorado.  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Good and sufficient notice of the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D.      The basis for the relief requested in the Motion are: (i) sections 105, 363 and 365 of the Bankruptcy Code; (ii) Rules 2002(a)(2), 6004, 6006 of the Bankruptcy Rules; and Local Rules 2002-1 and 6004-1.

E.      The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) approve the Assumption and Assignment Procedures; (iii) schedule the Auction and approve the manner of notice of the Auction; and (iv) schedule the Sale Hearing and approve the manner of notice of the Sale Hearing.

F.      The Bidding Procedures were negotiated by the parties at arms' length and in good faith.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      All Objections to the relief requested in the Motion that have not been withdrawn, waived, resolved by modifications set forth herein, or settled as announced to the Court at the

}
4874-6313-0466 v.1

hearing on the Motion, are overruled, <u>provided</u> <u>however</u> that, all objections that address the proposed sale of the Debtors' assets and/or the proposed assumption and/or assignment of any contracts or leases in connection with such sale are reserved and preserved for the Sale Hearing.

### <u>IMPORTANT DATES AND DEADLINES.</u>

3.     **<u>Bid Deadline</u>**.  **July 10, 2023, at 5:00 p.m. (prevailing Mountain Time)**, is the deadline by which bids for the Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted in accordance with the terms of the Bidding Procedures.

4.     **<u>Auction</u>**.  An Auction, if any, will be held at **10:00 a.m. (prevailing Mountain Time) on July 14, 2023**, at the offices of Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203, or such later date and time or location as selected by the Debtors (the "<u>Auction</u>"), in consultation with the Consultation Parties (as defined in the Bidding Procedures).  If the Auction date, time or location is modified, the Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders as soon as practicable, but no later than one (1) business day before such Auction.

5.     **<u>Sale Hearing</u>**. A hearing to consider approval of the Transaction and the sale(s) to the Winning Bidder(s) or Backup Bidder(s) (the "<u>Sale Hearing</u>") will commence on **July [21], 2023 at 10:00 a.m. (prevailing Mountain Time)**, and otherwise in accordance with any scheduling order entered by the Court.  Any party wishing to object to approval of the Transaction(s) and the sale(s) to the Winning Bidder(s) or Backup Bidder(s) (a "<u>Sale Objection</u>") or wishing to object to the conduct of the Auction (an "<u>Auction Objection</u>") shall, by no later

than **July 18, 2023 at 4:00 p.m. (prevailing Mountain Time)**, file and serve its Sale Objection or Auction Objection, as applicable, on the Notice Parties.

6.      For the avoidance of doubt, the dates and deadlines included in this Order and the Bidding Procedures may be modified only by (i) the Debtors, in consultation with the Committee, if any, and with the consent of the Cadence Bank (such consent not to be unreasonably withheld); or (ii) an order of the Court for cause shown.

7.      Any party failing to timely file a Sale Objection or an Auction Objection, as applicable, will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the assets and assignment and assumption of specified executory contracts and unexpired leases, in each instance free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement(s) for the Transaction(s).

## AUCTION, BIDDING PROCEDURES, BID PROTECTIONS, AND RELATED RELIEF.

8.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Transaction.  Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

9.      If the Debtors receive two or more Qualified Bids on the same or overlapping assets (including if approved, any Stalking Horse Bid), the Debtors will conduct the Auction to

determine the party or collective parties with the highest or otherwise best bid(s) (the "<u>Winning Bidder(s)</u>") in accordance with the Bidding Procedures.  The Debtors and their professionals shall direct and preside over the Auction in accordance with the Bidding Procedures and this Order.

10.    The stalking horse bidder, if one is approved by the Court (a stalking horse bidder approved by the Court is the "<u>Stalking Horse Bidder</u>" and its bid is the "<u>Stalking Horse Bid</u>"), shall be allowed a break-up fee in the amount of $351,000 plus three percent (3%) of the amount by which the aggregate consideration received by the Debtors for the assets sold by them pursuant to the Bidding Procedures exceeds $11,700,000  (the "<u>Break-up Fee</u>") and an expense reimbursement of up to $150,000 (the "<u>Expense Reimbursement</u>", and together with the Break-Up Fee the "<u>Bid Protections</u>") for its reasonable, out of pocket costs and attorneys' fees incurred by Stalking Horse Bidder in connection with submitting the Stalking Horse Bid and its due diligence in in connection therewith.  The Break-Up Fee and Expense Reimbursement shall be paid to the Stalking Horse Bidder at the time of a closing of a transaction(s) to one or more bidder(s) other than the Stalking Horse Bidder from the proceeds of such sale(s). The Stalking Horse Bidder shall provide support for its Expense Reimbursement to the Debtors and other Consultation Parties and if there is any dispute as to whether the reasonable amount of the Expense Reimbursement equals or exceeds $150,000, such disputed amount shall be escrowed from the proceeds of the alternative transaction and such dispute shall be determined on an expedited basis by the Bankruptcy Court.

11.    Unless the Court for cause orders otherwise, at the Auction, Qualified Bidders that have submitted Qualified Bids by the Bid Deadline will be entitled, but will not be obligated,

to submit overbids, and will be entitled as part of any such overbids to credit bid against property that is subject to a lien that secures its allowed claim pursuant to section 363(k) of the Bankruptcy Code, subject to the limits on credit bidding set forth in the Bidding Procedures. The Stalking Horse Bidder, if one is approved by the Court, is both an Acceptable Bidder and a Qualified Bidder, and the Stalking Horse Bid is a Qualified Bid. The Initial Overbid to the Stalking Horse Bid, if one is approved, shall be in an amount of no less than the value of the Stalking Horse Bid, plus the value of the Bid Protections, plus a value equal to $250,000 (which $250,000 may be subject to reduction depending on the lot(s) of assets being sold). Any Bid made subsequent to the Initial Overbid must be made in an amount having a value in excess of at least $100,000 higher than the previous highest or otherwise best Bid (which $100,000 may be subject to reduction depending on the lot(s) of assets being sold).

12.     At the Auction, the Debtors may: (a) select, in their business judgment (in consultation with the Consultation Parties), pursuant to the Bidding Procedures, the highest or otherwise best Bid(s) and the Winning Bidder(s) or Backup Bidder(s); and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtors' business judgment (in consultation with the Consultation Parties), is (i) inadequate, insufficient, or not the highest or best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or (iii) contrary to, or otherwise not in the best interests of the Debtors' estate, affected stakeholders, or other parties in interest.

13.     On or before the date that is twenty-one (21) calendar days prior to the Sale Hearing, in accordance with Bankruptcy Rule 2002(a) and (c), the Debtors (or their agent) shall serve the auction and sale notice, substantially in the form attached hereto as **Exhibit 2**, by first-

}
4874-6313-0466 v.1

class mail, postage prepaid, upon the Notice Parties and upon all other known creditors of the Debtors.

## **ASSUMPTION AND ASSIGNMENT PROCEDURES**

**Cure Objections and Assignability Objections**

14.     The Assumption and Assignment Notice attached hereto as **Exhibit 3** is approved.

15.     No later than **June 9, 2023**, the Debtors shall file with this Court and serve on the non-Debtors counterparty (a "Counterparty") to contracts ("Contracts") that the Winning Bidder(s) may seek to assume and assign (the "Proposed Assumed Contracts") the Assumption and Assignment Notice, which shall (i) identify the Contracts; (ii) list the Debtors' good faith calculation of Cure Costs with respect to each Contract; (iii) expressly state that assumption or assignment of a Contract is not guaranteed and is subject to the agreement of the Winning Bidder(s) and Court approval; and (iv) prominently display the deadline to file objections to the assumption, assignment, or sale of the Debtors' Proposed Assumed Contracts (as defined below). If there is one or more different Winning Bidders at the Auction, then the Debtors will serve a supplemental notice regarding the ability of such Winning Bidder to provide adequate assurance of future performance and the executory contracts and unexpired leases each is seeking to have assumed and assigned to such Winning Bidder(s) and there will be a supplemental opportunity for the counterparty to object to such Winning Bidder's adequate assurance of future performance.

16.     Any Counterparty to a Contract that wishes to object to the potential assumption, assignment, and sale of a Contract based on (i) an objection to the Debtors' proposed Cure Costs

to cure, to the extent required, any outstanding monetary defaults or any non-monetary defaults then existing under such Contract[2] (each, a "Cure Objection") and/or (ii) an objection to the assignability of the Contract, whether on grounds that such contract is not assignable under the contract or based on applicable law, is not an executory contract or unexpired lease, or otherwise (each, an "Assignability Objection"), shall file with the Bankruptcy Court and serve on the Notice Parties its Cure Objection and/or Assignability Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **June 30, 2023 at 4:00 p.m. (prevailing Mountain Time)**.

17.     In the event that the Debtors identify any Counterparty that was not served with the Assumption and Assignment Notice, the Debtors may subsequently serve such Counterparty with an Assumption and Assignment Notice, and the following procedures will nevertheless apply to such Counterparty; provided, however, that the deadline to file a Cure Objection or Assignability Objection with respect to such Counterparty shall be 4:00 p.m. (prevailing Mountain Time) on the date that is fourteen (14) days following service of the Assumption and Assignment Notice.

18.     If the parties are unable to consensually resolve a Cure Objection and/or Assignability Objection prior to the Sale Hearing, then the amount to be paid or reserved with respect to such Cure Objection, any non-monetary default set forth in such Cure Objection, and the Assignability Objection shall be determined by the Bankruptcy Court at the Sale Hearing or

---

[2] All arguments with respect to whether non-monetary defaults are required to be cured are preserved.

such later date as agreed to by the Debtors, after consulting with the Consultation Parties,[3] the applicable Winning Bidder and the Counterparty (an "Adjourned Cure Objection"). An Adjourned Cure Objection may be resolved after the closing date of the applicable Transaction; provided that the Debtors maintain a cash reserve equal to the cure amount the objecting Counterparty believes is required to cure the asserted monetary default under the applicable Contract. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the applicable Winning Bidder (or the Backup Bidder if the Backup Bidder becomes the Winning Bidder), as of the closing date of the applicable Transaction. All objections to the proposed assumption and assignment of the Debtors' right, title, and interest in, to, and under a Contract will be heard at the Sale Hearing, except with respect to an Adjourned Cure Objection as set forth herein.

19.     If a Counterparty fails to timely file with the Bankruptcy Court and serve on the Notice Parties a Cure Objection and/or Assignability Objection, the Counterparty shall be barred from contesting the Cure Costs set forth in the Assumption and Assignment Notice, any nonmonetary cures, and shall be barred from asserting that any Contract cannot be assumed and assigned under Bankruptcy Code section 365(b).

**Adequate Assurance Objections**

20.     The Debtors shall notify all Counterparties to Contracts that are to be assumed of the identities of the Winning Bidder(s) and Backup Bidder(s) as soon as practicable after those

---

[3] If a Consultation Party is the party with the Cure Objection, then such party shall not be a Consultation Party with respect to matters related to its Cure Objection.

}
4874-6313-0466 v.1

bidders have been identified for any Winning Bidder(s) or Backup Bidder(s) who are not the Stalking Horse Bidder, if one is approved by the Court, they already received notice of. Within one (1) day of identifying such Winning Bidder(s) and Backup Bidder(s), the Debtors shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Proposed Assumed Contracts for the applicable Winning Bidder and Backup Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under the Proposed Assumed Contracts, and a contact person with the proposed assignee that Counterparties may contact if they wish to obtain further information regarding the purchaser of the assets. The applicable Winning Bidder and Backup Bidder should reasonably cooperate with the applicable Counterparty to provide any additional information reasonably requested by such Counterparty and/or respond to further inquiries from such Counterparty. Any Counterparty to a Proposed Assumed Contract that wishes to object to the potential assumption, assignment, and sale of the Proposed Assumed Contract, the subject of which objection is to the proposed form of adequate assurance of future performance provided by a Winning Bidder(s) or Backup Bidder(s) (who is not the approved Stalking Horse Bidder) with respect to such contract (each, an "Adequate Assurance Objection"), shall file with the Bankruptcy Court and serve on the Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **July 20, 2023 at 4:00 p.m. (prevailing Mountain Time).**

21.    If the parties are unable to consensually resolve an Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate

assurance of future performance of the applicable Winning Bidder or Backup Bidder shall be determined by the Court at the Sale Hearing.

22.     If a Counterparty fails to timely file with the Bankruptcy Court and serve on the Notice Parties an Adequate Assurance Objection, the Winning Bidder and Backup Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract.

**MISCELLANEOUS**

23.     Within ten (10) days following the entry of this Order, the Debtors shall publish notice of the free and clear transaction and the Sale Hearing once in the USA Today National Edition in the form of Exhibit 4 hereto.

24.     Debtors' Advisors will hold separate weekly meetings with each of (i) counsel for Cadence Bank; (ii) counsel and/or financial advisors to the Committee; and (iii) counsel for and representatives of CKE Restaurant Holdings, Inc. ("CKE") to provide Postpetition Sale Process updates.

25.     If parties interested in the assumption and assignment of one or more CKE franchise agreement(s) contact CKE or if CKE has sourced and/or provided such parties' names to the Debtors as potentially interested bidders that are interested in the assumption and assignment of one or more CKE franchise agreement(s), then CKE is permitted to speak and engage with such parties about (i) being approved by CKE as a franchisee related thereto, and/or (ii) the franchisee relationship with CKE and the future of the restaurants proposed to be purchased by such party. CKE will provide weekly updates on the status of the franchisee

}
4874-6313-0466 v.1

approval process and the Debtors shall share such information with the Consultation Parties on a professional eyes' only basis.

26.     Nothing in this Order or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

27.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

28.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

29.     The requirements of Bankruptcy Rules 6004(h) and 6006(d) are waived.

30.     Notwithstanding Bankruptcy Rule 6004(h) and 6006(d), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

31.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

BY THE COURT:

_____
United States Bankruptcy Judge

14

**<u>Exhibit 1</u>**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankr. Case No. 23-11919-MER |
| BIGHORN RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11921-MER |
| SUMMIT RESTAURANT HOLDINGS, | ) | Bankr. Case No. 23-11922-MER |
| LLC; EMPIRE RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11924-MER |
| HEARTLAND RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11925-MER |
| ATLANTIC STAR RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11926-MER |
| and SUMMIT RESTAURANT | ) | |
| DEVELOPMENT, LLC | ) | **(Jointly Administered under Bankr.** |
| | ) | **Case No. 23-11919-MER)** |
| Debtor-in-Possession. | ) | |
| | ) | Chapter 11 |

---

**BIDDING PROCEDURES**

---

On May 4, 2023 (the "Petition Date"), the above captioned Debtors and Debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Colorado (the "Court"). The Debtors are in the process of pursuing a sale of substantially all of the Debtors' assets either in whole or in parts (a "Transaction"), through a Bankruptcy Code section 363 sale, chapter 11 plan (a "Plan"), or otherwise.

On _____, 2023, the Court entered the *Order (I) Approving the Bidding Procedures;(II) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Related Notices;(III) Scheduling the Bid Deadline, the Auction, and Sale Hearing; (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. ●] (the "Bidding Procedures Order"),[4] by which the Court approved the following procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing process and if any Qualified Overbid is received, an auction (the "Auction") to determine the Transaction that provides the highest or otherwise best offer. **For the avoidance of doubt, the Debtors, in consultation with the Consultation Parties, will consider Bids for substantially all or a subset of the Debtors' assets.[5]**

### A.    Marketing Process

In consultation with their investment banker, Brookwood Associates, the Debtors have developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe

---

[4] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

[5] CKE Restaurant Holdings, Inc. reserves all of its rights in connection with any such proposed Bid(s).

1

would have the financial resources to consummate a Transaction. The list of parties includes strategic investors and financial investors, including well-resourced parties that the Debtors had been in contact with as part of their prepetition marketing (collectively, the "Contact Parties").

The Debtors and Brookwood Associates will contact (to the extent not already contacted) the Contact Parties to explore their interest in pursuing a Transaction. The Contact Parties may include parties whom the Debtors or their advisors previously contacted regarding a Transaction, regardless of whether such parties expressed any interest at such time in pursuing a Transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party an information package consisting of: (i) a copy of the Bidding Procedures, the Bidding Procedures Order, and any other related documents; (ii) a form confidentiality agreement (a "Confidentiality Agreement")[6]; and (iii) such other materials as appropriate under the circumstances.

**B.      Participation Requirements.**

To receive due diligence information, including full access to the Debtors' electronic data room and additional non-public information regarding the Debtors, a party interested in consummating a Transaction (a "Potential Bidder") should deliver (or have delivered) to each of (i) Brookwood Associates, investment banker to the Debtors, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, GA 30305, Attn: Amy Forrestal (AF@brookwoodassociates.com); and (ii) Markus Williams Young Hunsicker LLP, 1775 Sherman Street, Suite 1950, Denver Colorado 80203, Attn: James Markus (jmarkus@markuswilliams.com), counsel to the Debtors (collectively, the "Debtors' Advisors"), the following documents (collectively, the "Preliminary Bid Documents"):

> i.      an executed Confidentiality Agreement, to the extent not already executed; and
>
> ii.      such other documentation requested by and acceptable to the Debtors of the Potential Bidder's financial and operational capacity to close a proposed Transaction.

Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors will determine (in consultation with the Consultation Parties) and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid (as defined below) and participate in any Auction, as applicable, and will provide copies of any such notices to the Notice Parties. Except as otherwise determined in the Debtors' business judgment (in consultation with the Consultation Parties), only those Potential Bidders that have submitted acceptable Preliminary Bid Documents and have been determined by the Debtors in their reasonable business discretion (in consultation with the Consultation Parties) to be a bidder who has met the requirements set

---

[6] The Stalking Horse Bidder (as defined below) and certain other bidders have already entered into a Confidentiality Agreement prior to the Petition Date.

forth herein (each, an "Acceptable Bidder") may submit Bids. If a stalking horse bidder is approved by the Court (such Court-approved stalking horse bidder is the "Stalking Horse Bidder"), such Stalking Horse Bidder will be deemed to be an Acceptable Bidder.

If the Stalking Horse Bidder is approved by the Court at the Bidding Procedures hearing, then the asset purchase agreement proposed by such Stalking Horse Bidder will serve as the form asset purchase agreement and if no Stalking Horse Bidder is approved by the Court at the Bid Procedures hearing, the Debtors will provide a form asset purchase agreement (collectively, the "Form Documents").  Brookwood Associates will make the Form Documents available to any Acceptable Bidders and the Consultation Parties. Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Acceptable Bidder and its contemplated transaction.

**C.**      **Qualifying Bid Deadline.**

An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in .pdf or similar format) so as to be actually received on or before **July 10, 2023, at 5:00 p.m. (prevailing Mountain Time)** (the "Bid Deadline") to the Debtors' Advisors.  Debtors' Advisors shall provide copies of each Bid to the Consultation Parties within one (1) calendar day after receipt.

**D.**      **Bid Requirements.**

Each Bid by an Acceptable Bidder must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements"):

i.       Purpose.  Each Acceptable Bidder must state if the Bid is an offer by the Acceptable Bidder to purchase assets and which executory contracts and unexpired leases the Acceptable Bidder seeks to have assumed and assigned as part of the Transaction.

ii.      Purchase Price.  Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash components of the proposed Transaction consideration and any non-cash consideration consisting of certain liabilities to be assumed by the Acceptable Bidder or allowed claims to be waived by the Acceptable Bidder (the "Purchase Price").

iii.     Deposit.  Each Bid must be accompanied by a cash deposit in the amount equal to 5% of the aggregate value of the cash and non- cash consideration of the Bid to be held in one or more escrow accounts on terms acceptable to the Debtors (the "Deposit").

iv.      Marked Agreement.  Each Bid must include an asset purchase agreement marked against the applicable Form Documents, in each case, together with the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Acceptable Bidder proposes to effectuate the Transaction (collectively, the "Transaction Documents").  Any modifications to the Transaction contemplated by the Form Documents must be in form

and substance acceptable to the Debtors in consultation with the Consultation Parties. Notwithstanding anything to the contrary herein or in the Form APA, an Acceptable Bidder may bid on any of the Debtors' assets and may assume or elect not to assume the franchise agreement(s) between Debtors and CKE Restaurant Holdings, Inc. ("CKE")

v.      Committed Financing.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction (in consultation with the Consultation Parties) that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, or shall have covenants and conditions reasonably acceptable to the Debtors (in consultation with the Consultation Parties).

vi.     Contingencies; No Financing or Diligence Outs.  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

vii.    No Bidding Protections.  Each Bid (other than the Stalking Horse Bid, if one is approved by the Court) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidder, if one is approved by the Court) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.   By submitting its Bid, each Bidder (other than the Stalking Horse Bidder, if one is approved by the Court) is agreeing to refrain from and waive any assertion or request for any such reimbursement or compensation on any basis, including pursuant to section 503(b) of the Bankruptcy Code.

viii.   Identity.  Each Bid must fully disclose (i) the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation, and (ii) whether the equity holder(s), financial backer or any member of proposed senior management of such entity is an insider of the Debtors or any affiliate of any such insider, including for purposes of Section 363(m) of the Bankruptcy Code.   Each Bid should also include contact information for the specific person(s) and counsel whom the Debtors' Advisors should contact regarding such Bid.

ix.     Authorization.  Each Bid must contain evidence acceptable to the Debtors (in consultation with the Consultation Parties), that the Acceptable Bidder has obtained

4

authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Transaction contemplated in such Bid.

x.     <u>As-Is, Where-Is</u>.   Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Transaction prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Transaction or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents; and (iv) the Acceptable Bidder did not engage in any collusive conduct and acted in good faith in submitting its Bid.

xi.     <u>Adequate Assurance</u>. Each Bid must contain evidence acceptable to the Debtors in their reasonable discretion (in consultation with the Consultation Parties) that the Acceptable Bidder has the ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Acceptable Bidder's ability to perform future obligations arising under the contracts and leases proposed in its Bid to be assumed by the Debtors and assigned to the Acceptable Bidder, in a form that will permit the immediate dissemination of such evidence to the Counterparties to such contracts and leases (the "<u>Adequate Assurance Information</u>"). Adequate Assurance Information may include: (i) the specific name of the proposed assignee, and the proposed name under which the proposed assignee intends to operate the store if not the current tradename of the Debtors, (ii) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of the applicable contracts and leases; (iii) audited or unaudited financial statements, tax returns, bank account statements or annual reports; (iv) financial projections, calculations, and/or financial pro-formas prepared, if any, in contemplation of purchasing the applicable contracts and leases; (v) the proposed assignee's intended use of the leased premises and a description of the proposed business to be conducted at the premises; (vi) a contact person for the proposed assignee; and/or (vii) any other documentation that the Debtors may further request (in consultation with the Consultation Parties).  All Bidders are deemed to consent to the transmission of Adequate Assurance Information to the applicable Counterparties.  All Bidders should provide such other and further information reasonably requested by the applicable Counterparty so as to enable such Counterparty to evaluate such Bidder's adequate assurance of future performance.

xii.     <u>CKE Consent to Assignment of Franchise Agreement(s)</u>.  An Acceptable Bidder is not obligated to, but may, require the assumption and assignment of any franchise agreement(s) between Debtors and CKE in order to submit a Qualified Bid.  To the extent an Acceptable Bidder requires the assignment of any franchise agreement(s) between Debtors and CKE Restaurant Holdings, Inc. ("<u>CKE</u>") in its Bid, the Acceptable Bidder shall state whether or not it has the consent of CKE to the assignment of the franchise

agreement(s) to the Acceptable Bidder, or its assignee.  If consent has not been obtained, but the Acceptable Bidder has commenced the diligence process with CKE, the Acceptable Bidder shall state its understanding of the status of the approval process.

The Debtors, in consultation with the Consultation Parties, reserve the ability to request an allocation of proceeds for any Qualified Bid that bids on assets of more than one of the Debtors. If a Qualified Bidder does not provide an allocation of proceeds with respect to its Qualified Bid on assets of more than one of the Debtors after being given a reasonable time to respond, the Debtors, in consultation with the Consultation Parties, may determine such allocation using their reasonable business judgment, subject to objection by the Prepetition Secured Parties in which case the Court will determine the proper allocation of such proceeds. Such an allocation shall not be deemed to modify the bid of a Qualified Bidder to close on less than all the assets specified in its Asset Purchase Agreement.

## E.      **Stalking Horse Bid, Bid Protections and Initial Overbid.**

If the Stalking Horse Bid is approved by the Court, each subsequent Bid or combination of Bid must propose a purchase price greater than the sum of (i) the value of the Stalking Horse Agreement, as determined by the Debtors; (ii) the Bid Protections and in the amount(s) approved by the Court), and (iii) an initial overbid of not less than $250,000 (which $250,000 is subject to reduction depending on the lot(s) of assets being sold) (the "Initial Overbid").  Any Bid made subsequent to the Initial Overbid must be made in an amount having a value in excess of at least $100,000 higher than the previous highest or otherwise best Bid (which $100,000 may be subject to reduction depending on the lot(s) of assets being sold).

## F.      **Right to Credit Bid.**

Unless the Court for cause orders otherwise, any Qualified Bidder who has a lien on any assets of the Debtors' estates that secures its allowed claim (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided, however, that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured. The Stalking Horse Bidder shall be entitled to credit bid the amount of its Bid Protections as part of any Bid it may make at the Auction.  The Confidentiality Agreement prohibits any Qualified Bidder from purchasing the position of a Secured Creditor and no such transferee shall be permitted to credit bid.

## G.      **Designation of Qualified Bidders.**

A Bid will be considered a "Qualified Bid," and each Acceptable Bidder that submits a Qualified Bid will be considered a "Qualified Bidder," if the Debtors (in consultation with the Consultation Parties), determine that such Bid:

  i.      Satisfies the Bid Requirements set forth above, including any required Initial Overbid;

ii.     Is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, all applicable approvals, experience, and other considerations) to be consummated, if selected as the Winning Bid (as defined below), within a time frame acceptable to the Debtors (in consultation with the Consultation Parties);

iii.    By **July 12, 2023**, the Debtors will notify each Acceptable Bidder whether such party is a Qualified Bidder (Stalking Horse Bidder, if one is approved by the Court, is a Qualified Bidder);

iv.     If any Bid is determined by the Debtors (in consultation with the Consultation Parties) not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three (3) business days after the Bid Deadline.

v.      Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors, in consultation with the Consultation Parties, may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

vi.     Notwithstanding anything herein to the contrary, the Debtors (in consultation with the Consultation Parties) reserve the right to work with (1) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Qualified Bid prior to the Bid Deadline or (2) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction. The Debtors (in consultation with the Consultation Parties) reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

vii.    For the avoidance of doubt, the Stalking Horse Bidder (if one is approved) is a Qualified Bidder and shall be entitled to credit bid any amounts approved by the Court as Bid Protections should it chose to bid at the Auction.

**H.     <u>Bid Deadline and Scheduling the Auction.</u>**

The deadline for Qualified Bidders to submit a bid shall be **July 10, 2023** (the "Bid Deadline"). If the Debtors receive two or more Qualified Bids on the same or overlapping assets, the Debtors will conduct the Auction to determine the Winning Bidder with respect to the Transaction. If the

7

Debtors do not receive any other Qualified Bids for the assets as set forth in the Asset Purchase Agreement of the Stalking Horse Bidder (if one is approved by the Court), then there shall be no Auction and the Debtors shall seek to have the Stalking Horse Bid approved by the Bankruptcy Court at a Sale Hearing to be scheduled as expeditiously as possible.

No later than one (1) day prior to the Auction, the Debtors, will notify all Qualified Bidders of the highest or otherwise best Qualified Bid(s), as determined in the Debtors' business judgment (in consultation with the Consultation Parties) (the "Baseline Bid(s)"), and provide copies of the documents supporting the Baseline Bid(s) to all Qualified Bidders and the Consultation Parties. The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Winning Bid(s) shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid(s) to the Debtors' estates, including, among other things: (a) the number, type, and nature of any changes to the applicable Form Documents requested by the Qualified Bidder; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the Transaction contemplated by the Baseline Bid(s); (e) the tax consequences of such Qualified Bid(s); and, (f) if seeking the assumption and assignment of any franchise agreements with CKE, whether the consent of CKE to such assignment has been obtained and if consent has not been obtained, whether the Qualified Bidder has requested consent and the status and timing of when consent is expected (collectively, the "Bid Assessment Criteria").

Unless otherwise indicated as provided by the Bidding Procedures Order, the Auction shall take place at **10:00 a.m. (prevailing Mountain Time) on July 14, 2023**, at the offices of Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203, or such later date and time or location as selected by the Debtors, in consultation with the Consultation Parties and subject to the consent of Cadence Bank (such consent not to be unreasonably withheld). The Auction shall be conducted in a timely fashion according to the following procedures.

## I.      **The Auction Process.**

Conduct and Form of the Auction. The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s). All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. At the Auction, the Debtors intend to offer their assets for sale in four (4) distinctive lots: (i) those properties and stores belonging to the Debtors and located in Georgia and South Carolina; (ii) those properties and stores belonging to the Debtors and located in Missouri and Kansas; (iii) those properties and stores belonging to the Debtors and located in Montana and Wyoming; and (iv) all properties and stores belonging to the Debtors wherever located. Qualified Bidders shall be permitted to designate properties and stores within a lot that they are excluding from their bid. The Debtors shall retain a court reporter to transcribe the statements made at the Auction and shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Winning Bid(s).

<u>Attendance at the Auction</u>.  Only Qualified Bidders, the Debtors, Cadence Bank, CKE, the Committee, and each of their respective legal and financial advisors, and any other parties specifically invited or permitted to attend by the Debtors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear in person at the Auction and may speak or bid themselves or through duly authorized representatives.  Except as otherwise permitted by the Debtors, only Qualified Bidders shall be entitled to bid at the Auction.

<u>Overbids</u>.  "Overbid" means any Bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid(s).  Each Overbid must comply with the following conditions:

    i.     <u>Minimum Overbid Increment</u>.  The first Overbid(s) following the Baseline Bid(s) (the "Initial Overbid") shall be in an amount having a value equal to or in excess of $250,000 higher that the first Baseline Bid(s) (which $250,000 is subject to reduction depending on the lot(s) of assets being sold), unless otherwise determined by the Debtors in an exercise of their business judgment (after consultation with the Consultation Parties).  Any Bid(s) made subsequent to the Initial Overbid must be made in an amount having a value in excess of at least $100,000 higher than the Prevailing Highest Bid(s) (as defined below) (which $100,000 may be subject to reduction depending on the lot(s) of assets being sold).

    ii.     <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

    iii.     <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment (in consultation with the Consultation Parties), but shall otherwise comply with the terms of these Bidding Procedures.  For the avoidance of doubt, a Qualified Bidder may modify its Bid at the Auction to include the acquisition of additional assets that were not included in its original Bid, provided that the modified Bid meets the minimum required Overbid increment.

    iv.     <u>Announcing Highest Bid(s)</u>.  Subsequent to each Overbid Round Deadline, and after consulting with the Consultation Parties, the Debtors shall announce whether the Debtors have identified an Overbid or Overbids as being higher or otherwise better than the Baseline Bid(s), in the initial Overbid Round, or, in subsequent rounds, the Overbid(s) previously designated by the Debtors as the prevailing highest or otherwise best Bid(s) (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid(s) designated by the Debtors as the Prevailing Highest Bid(s), as well as the value attributable by the Debtors to such Prevailing Highest Bid(s) based on, among other things, the Bid Assessment Criteria.

v.      <u>Consideration of Overbids.</u>  The Debtors reserve the right, in consultation with the Consultation Parties, in their business judgment, to adjourn the Auction one or more times, to, among other things, (1) facilitate discussions between the Debtors and Potential Bidders, (2) allow Qualified Bidders to consider how they wish to proceed, and (3) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder(s) has sufficient internal resources or has received sufficient noncontingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount(s).

vi.      <u>Closing the Auction.</u>  During or prior to the conclusion of the Auction, the Debtors shall have the right, in the exercise of their reasonable business judgment and after consulting the Consultation Parties, to modify or amend the Auction process and procedures as deemed necessary and appropriate by the Debtors.  The Auction shall continue until there is only one or more Qualified Bids that the Debtors determine, in consultation with the Consultation Parties, in their business judgment, to be the highest or otherwise best Qualified Bid(s).  Such Qualified Bid(s) shall be declared the "<u>Winning Bid(s)</u>" and such Qualified Bidder(s), the "<u>Winning Bidder(s)</u>," at which point the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid(s).  Such acceptance by the Debtors of the Winning Bid(s) is conditioned upon approval by the Court of the Winning Bid(s).  For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their fiduciary duties under applicable law.  As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid(s).

vii.     <u>No Collusion; Good-Faith Bona Fide Offer.</u>  Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (1) it has not engaged in any collusion with respect to the bidding and (2) its Qualified Bid is a good-faith bona fide offer and it intends to consummate the proposed Transaction if selected as the Winning Bidder.

## J.     <u>Backup Bidder(s).</u>

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder(s) with the next-highest or otherwise second-best Qualified Bid(s) at the Auction, as determined by the Debtors in the exercise of their business judgment, after consultation with the Consultation Parties, shall be required to serve as a backup bidder(s) (the "<u>Backup Bidder(s)</u>") until the earlier of (i)  thirty (30) days after entry of the Sale Order and (ii) the date of closing of the applicable Transaction (the "<u>Outside Date</u>"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

The identity of the Backup Bidder(s) and the amount and material terms of the Qualified Bid(s) of the Backup Bidder(s) shall be announced by the Debtors, at the conclusion of the Auction at the same time the Debtors announces the identity of the Winning Bidder(s).  The Backup

Bidder(s) shall be required to keep its Qualified Bid(s) (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the Outside Date. Each Backup Bidder's Deposit shall be held in escrow pending the occurrence of the Outside Date.

If any Winning Bidder(s) does not obtain Bankruptcy Court approval or fails to consummate the approved Transaction contemplated by its Winning Bid(s) prior to the Outside Date, the Debtors may select the Backup Bidder(s) as the Winning Bidder(s), and such Backup Bidder(s) shall be deemed a Winning Bidder(s) for all purposes without any further order of the Bankruptcy Court. The Debtors will be authorized, but not required, to consummate the Transaction contemplated by the Bid of such Backup Bidder(s) without further order of the Court or notice to any party.  In the case of a defaulting Winning Bidder, each Winning Bidder's Deposit shall be forfeited to the Debtors' estates, and the Debtors, on behalf of themselves and their estates, specifically reserve the right to seek all available remedies against the defaulting Winning Bidder(s), including, but not limited to, specific performance.

## K.    **Notice Parties.**

Information that must be provided to the "Notice Parties" under these Bidding Procedures must be provided to the following parties:

i.      The Debtors' Advisors: (a) financial advisor, Dan Dooley, c/o MorrisAnderson and Associates, Ltd., 55 West Monroe St., Suite 2350, Chicago, IL 60603 (DDooley@morrisanderson.com); (b) Brookwood Associates, investment banker to the Debtors, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, GA 30305, Attn: Amy Forrestal (AF@brookwoodassociates.com); and (c) Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203, Attn: James T. Markus (jmarkus@markuswilliams.com), counsel to Debtors.

ii.     Office of the United States Trustee, Byron Rodgers Federal Building; 1961 Stout Street, #12-200, Denver, Colorado 80294, Robert Samuel Boughner, (Samuel.Boughner@usdoj.gov);

iii.    Counsel to Cadence Bank as senior secured lender, Morris Manning & Martin, LLP, Attn: Frank W. DeBorde, 1600 Atlanta Financial Center, 3343 Peachtree Road, NE, Atlanta, Georgia 30326 (fwd@mmmlaw.com);

iv.     Counsel to CKE Restaurants Holdings, Inc., DLA PIPER, Attn Richard Chesley, 444 West Lake Street, Suite 900, Chicago, IL 60606 (Richard.chesley@dlapiper.com); and

v.      Proposed counsel to the Committee, [Insert]

In addition to being Notice Parties, the following persons: (i) Cadence Bank; (ii) a representative the Committee; and (iii) CKE shall also be deemed "Consultation Parties." If a Consultation Party becomes a Qualified Bidder, then the Consultation Party shall not be a Consultation Party for so

long as such Consultation Party remains a Qualified Bidder. The Debtors' Advisors will hold separate weekly meetings with each of (i) counsel for Cadence Bank; (ii) counsel and/or financial advisors to the Committee; and (iii) counsel for CKE to provide Postpetition Sale Process updates.

**L.**     **"As Is, Where Is."**

Consummation of any Transaction will be on an "as is, where is" basis, with all faults and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted or agreed to by the Debtors. Except as specifically accepted or agreed to by the Debtors, all of the Debtors' right, title, and interest in and to the respective assets will be transferred to the Winning Bidder(s) free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with section 363(f) of the Bankruptcy Code, as applicable.

By submitting a Bid, except as specifically accepted or agreed to by the Debtors, each Acceptable Bidder will be deemed to acknowledge and represent that it (A) has had an opportunity to conduct adequate due diligence regarding the Transaction prior to making its Bid, (B) has relied solely on its own independent review, investigation, and inspection of any document, including executory contracts and unexpired leases, in making its Bid, and (C) did not rely on or receive from any party any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Transaction or the completeness of any information provided in connection with the Transaction or the Auction.

**M.**     **Reservation of Rights.**

The Debtors reserve the right to modify these Bidding Procedures in their business judgment, in consultation with the Consultation Parties, in any manner that is not inconsistent with prior orders of the Court or applicable law and will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Transaction, including: (i) extending the deadlines set forth in these Bidding Procedures; (ii) adjourning the Auction at the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; and (v) rejecting any or all Bids or Qualified Bids. Nothing in these Bidding Procedures shall abrogate the fiduciary duties of the Debtors. Nothing herein shall prejudice the rights of the Stalking Horse Bidder to the Bid Protections.

**N.**     **Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction, and enforcement of these Bidding Procedures.

**O.**     **Sale Hearing.**

A hearing to consider approval of the Transaction and the sale to the Winning Bidder(s) or Backup Bidder(s) (the "Sale Hearing") will commence on **July [21], 2023 at 10:00 a.m. (prevailing Mountain Time)**.

Any party wishing to object to approval of the Transaction and the sale to the Winning Bidder(s) or Backup Bidder(s) (a "Sale Objection") or wishing to object to the conduct of the Auction (an "Auction Objection") shall, by no later than **July 18, 2023 at 4:00 p.m. (prevailing Mountain Time)**, file and serve its Sale Objection or Auction Objection, as applicable, on the Notice Parties.

Any party failing to timely file a Sale Objection or an Auction Objection, as applicable, will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement for the Transaction.

**P.     Return of Deposit.**

The Deposit of the Winning Bidder(s) shall be applied to the Purchase Price of such Transaction at closing.  The Deposits for each Qualified Bidder(s) shall be held in one or more escrow accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Winning Bidder(s) and the Backup Bidder(s)) on the date that is three (3) business days after the Auction.

If any Winning Bidder fails to consummate a proposed Transaction because of a breach by such Winning Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Winning Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates, and the Debtors shall be free to consummate the proposed Transaction with the applicable Backup Bidder(s) without the need for an additional hearing or order of the Court.

**Q.     No Modification of Bidding Procedures.**

These Bidding Procedures may not be modified except as permitted by these Bidding Procedures.
.

**<u>Exhibit 2</u>**

**Sale Notice**

4893-8130-5441, v. 3

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankr. Case No. 23-11919-MER |
| BIGHORN RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11921-MER |
| SUMMIT RESTAURANT HOLDINGS, | ) | Bankr. Case No. 23-11922-MER |
| LLC; EMPIRE RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11924-MER |
| HEARTLAND RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11925-MER |
| ATLANTIC STAR RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11926-MER |
| and SUMMIT RESTAURANT | ) | |
| DEVELOPMENT, LLC | ) | **(Jointly Administered under Bankr.** |
| | ) | **Case No. 23-11919-MER)** |
| Debtor-in-Possession. | ) | |
| | ) | Chapter 11 |

---

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND FREE AND
CLEAR SALE HEARING**

---

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On May 4, 2023, the above-captioned Debtors (the "Debtors")[7] filed with the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") a motion [Docket No. ____] (the "Motion") seeking entry of an order (i) authorizing and approving bidding procedures (the "Bidding Procedures"), to be used in connection with the disposition (the "Transaction") of substantially all of the Debtors' assets either in whole or in parts (the "Assets; (ii) scheduling an auction for the Assets (the "Auction"); (iii) scheduling a hearing to approve the Transaction (the "Sale Hearing"); (iv) authorizing certain procedures related to the Debtors' assumption and assignment of executory contracts and unexpired leases (the "Assignment Procedures") in connection with any Transaction, including notice to each non-Debtors counterparty (each, a "Counterparty") to an executory contract or unexpired lease (collectively, the "Contracts") of the Debtors' proposed cure amounts to cure all monetary defaults under the Contracts (the "Cure Costs"), if any, and notice of potential assumption and assignment of certain Contracts (collectively, the "Proposed Assumed Contracts") in connection with the Transaction; and (v) granting related relief.

2.      On _____, 2023, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. __] approving, in part, the relief requested in the Motion.

3.      Pursuant to the Bidding Procedures Order, any person or entity interested in participating in the Auction must, among other things, submit a Bid (as defined in the Bidding Procedures) for the Assets so as to be **actually received** on or before **July 10, 2023, at 5:00 p.m.**

---

[7] Capitalized terms used herein but not defined herein will have the meanings ascribed such terms in the Bidding Procedures Order or Bidding Procedures.

1

(**prevailing Mountain Time**) (the "<u>Bid Deadline</u>") to: (i) financial advisor, Dan Dooley, c/o MorrisAnderson and Associates, Ltd., 55 West Monroe St., Suite 2350, Chicago, IL 60603 (DDooley@morrisanderson.com); and (ii) James T. Markus, Markus Williams Young & Hunsicker, LLC, counsel to Debtors (jmarkus@markuswilliams.com).

4.     If the Debtors receive two or more Qualified Bids on the same or overlapping assets (including any approved Stalking Horse Bid), the Debtors will conduct the Auction to determine the Winning Bidder with respect to the Transaction.

5.     The Auction shall take place at **10:00 a.m. (prevailing Mountain Time) on July 14, 2023**, at the offices of Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80202, or such later date and time or location as selected by the Debtors, in consultation with the Consultation Parties and subject to the consent of Cadence Bank. The Winning Bid and the Backup Bid (each as defined in the Bidding Procedures) shall be announced by the Debtors at the conclusion of the Auction.

6.     Any party wishing to object to approval of the Transaction and the sale to the Winning Bidder(s) or Backup Bidder(s) (a "<u>Sale Objection</u>") or wishing to object to the conduct of the Auction (an "<u>Auction Objection</u>") shall, by no later than **July 18, 2023 at 4:00 p.m. (prevailing Mountain Time)**, file and serve its Sale Objection or Auction Objection, as applicable, on the following parties: (i) the Debtors' Advisors: (a) Debtors' financial advisor, Dan Dooley, c/o MorrisAnderson and Associates, Ltd., 55 West Monroe St., Suite 2350, Chicago, IL 60603  (DDooley@morrisanderson.com); (b) Brookwood Associates, investment banker to the Debtors, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, GA 30305, Attn: Amy Forrestal (<u>AF@brookwoodassociates.com</u>); and (c) Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203, Attn: James T. Markus (<u>jmarkus@markuswilliams.com</u>), counsel to Debtors; (ii) Office of the United States Trustee, Byron Rodgers Federal Building; 1961 Stout Street, #12-200, Denver, Colorado 80294, Robert Samuel Boughner, (<u>Samuel.Boughner@usdoj.gov</u>); (iii) Counsel to Cadence Bank as senior secured lender, Morris Manning & Martin, LLP, Attn: Frank W. DeBorde, 1600 Atlanta Financial Center, 3343 Peachtree Road, NE, Atlanta, Georgia 30326 (<u>fwd@mmmlaw.com</u>); (iv) DLA PIPER, Attn: Richard Chesley, counsel for CKE Restaurants Holdings, Inc.; 444 West Lake Street, Suite 900, Chicago, IL 60606 (<u>Richard.chesley@dlapiper.com</u>); and (v) Proposed counsel to the Committee.

7.     Any party failing to timely file a Sale Objection or an Auction Objection, as applicable, will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement for the Transaction and assumption and assignment of the specified executory contracts and unexpired leases.

8.     **The Sale Hearing will commence on July [21], 2023 at 10:00 a.m. (prevailing Mountain Time)** before the Honorable Michael E. Romero, United States Bankruptcy Judge, in the Bankruptcy Court located at Courtroom C, United States Custom House, 721 19th Street,

Denver, Colorado 80202. Any creditor or party in interest who wishes to have its position considered regarding the Motion must, in addition to filing its response or objection, appear at the scheduled hearing either in person or by telephone, consistent with Judge's procedures as located on the Bankruptcy Courts website: cob.uscourts.gov. The Debtors' presentation to the Bankruptcy Court for approval of one or more highest or otherwise best bid(s) resulting from the Auction (each a "<u>Winning Bid</u>") does not constitute the Debtors' acceptance of such bid(s). The Debtors will have accepted the terms of a Winning Bid or Winning Bids only when such bid(s) has/have been approved by the Bankruptcy Court pursuant to an order. This Notice is subject to the fuller terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures.

9.      Parties interested in receiving additional information, including, with regard to the Transaction, the Assets, the Auction, or the Bidding Procedures may make requests to counsel to the Debtors, Markus Williams Young & Hunsicker, LLC 1775 Sherman Street, Suite 1950, Denver, Colorado 80203; Attn: William G. Cross (<u>wcross@markuswilliams.com</u>).

10.     Copies of the Motion, Bidding Procedures, all exhibits and schedules thereto, the Bid Procedures Order, the Auction and Sale Notice, and the Contracts Schedule, and certain other documents relevant to the Sale Transaction, may be obtained by contacting the Debtors' counsel, in writing or by e-mail, at Markus Williams Young & Hunsicker, LLC 1775 Sherman Street, Suite 1950, Denver, Colorado 80203; Attn: William G. Cross (<u>wcross@markuswilliams.com</u>). You may also obtain a copy of the Motion by visiting the Court's website at https://www.cob.uscourts.gov/ in accordance with the procedures and fees set forth therein.

3

## Exhibit 3

**Assumption and Assignment**

**Notice**

4893-8130-5441, v. 3

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankr. Case No. 23-11919-MER |
| BIGHORN RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11921-MER |
| SUMMIT RESTAURANT HOLDINGS, | ) | Bankr. Case No. 23-11922-MER |
| LLC; EMPIRE RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11924-MER |
| HEARTLAND RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11925-MER |
| ATLANTIC STAR RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11926-MER |
| and SUMMIT RESTAURANT | ) | |
| DEVELOPMENT, LLC | ) | **(Jointly Administered under Bankr.** |
| | ) | **Case No. 23-11919-MER)** |
| Debtor-in-Possession. | ) | |
| | ) | Chapter 11 |

---

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH
TRANSACTION**

---

1.      On May 4, 2023, the above-captioned Debtors (the "<u>Debtors</u>")[8] filed with the United States Bankruptcy Court for the District of Colorado (the "<u>Bankruptcy Court</u>") a motion [Docket No. ____] (the "<u>Motion</u>") seeking entry of (a) an order (i) authorizing and approving bidding procedures (the "<u>Bidding Procedures</u>"), to be used in connection with the disposition (the "<u>Transaction</u>") of substantially all of the Debtors' assets either in whole or in parts (the "<u>Assets</u>; (ii) scheduling an auction for the Assets (the "<u>Auction</u>"); (iii) scheduling a hearing to approve the Transaction (the "<u>Sale Hearing</u>"); (iv) authorizing certain procedures related to the Debtors' assumption and assignment of executory contracts and unexpired leases (the "<u>Assignment Procedures</u>") in connection with any Transaction, including notice to each non-Debtors counterparty (each, a "<u>Counterparty</u>") to an executory contract or unexpired lease (collectively, the "<u>Contracts</u>") of the Debtors' proposed cure amounts to cure all monetary defaults under the Contracts (the "<u>Cure Costs</u>"), if any, and notice of potential assumption and assignment of certain Contracts (collectively, the "<u>Proposed Assumed Contracts</u>") in connection with the Transaction; and (v) granting related relief.

2.      On _____, 2023, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ___] approving, in part, the relief requested in the Motion.

3.      **The Sale Hearing will commence on July [21], 2023 at 10:00 a.m. (prevailing Mountain Time)** before the Honorable Michael E. Romero, United States Bankruptcy Judge, in the Bankruptcy Court located at Courtroom C, 721 19th Street, Denver, Colorado 80202.  Any creditor or party in interest who wishes to have its position considered regarding the Motion must,

---

[8]  Capitalized terms used herein but not defined herein will have the meanings ascribed such terms in the Bidding Procedures Order or Bidding Procedures.

1

in addition to filing its response or objection, appear at the scheduled hearing either in person or by telephone, consistent with Judge's procedures as located on the Bankruptcy Courts website: cob.uscourts.gov. Parties seeking telephonic participation must dial (833) 435-1820; access code: 161 090 8955.  The Debtors' presentation to the Bankruptcy Court for approval of one or more highest or otherwise best bid(s) resulting from the Auction (each a "<u>Winning Bid</u>") does not constitute the Debtors' acceptance of such bid(s).  The Debtors will have accepted the terms of a Winning Bid or Winning Bids only when such bid(s) has/have been approved by the Bankruptcy Court pursuant to an order.

4.      In connection with the Transaction, and in accordance with the Assumption and Assignment Procedures set forth in the Motion and the Bidding Procedures Order, the Debtors may seek to assume and assign to the Stalking Horse Bidder or one or more alternative Winning Bidders certain Contracts of the Debtors. Each of the Debtors' Contracts is identified on <u>Schedule 1</u> attached hereto.  The inclusion of any Contract on <u>Schedule 1</u> does NOT constitute an admission that a particular Contract is an executory contract or unexpired lease or require or guarantee that such Contract will be assumed or assigned, and all rights of the Debtors with respect thereto are reserved.  The Cure Costs, if any, that the Debtors believe are required to be paid to the applicable Counterparty to cure any monetary defaults under each contract pursuant to Bankruptcy Code sections 365(b)(1)(A) and (B), to the extent that such Contract is ultimately assumed and assigned, is set forth on the <u>Schedule 1</u>.

5.      Any Counterparty to a Contract that wishes to object to the potential assumption, assignment, and sale of the Contract on any grounds (other than Adequate Assurance Objections, as noted below), including the subject of which objection is either (i) the Debtors' proposed Cure Costs to cure any outstanding monetary defaults then existing under such contract and/or the cure of any non-monetary defaults (each, a "<u>Cure Objection</u>") and/or (ii) an objection to the assignability of the Contract, whether on grounds that such contract is not assignable for any reason, including under the contract or based on applicable law, is not an executory contract or unexpired lease, or otherwise and/or (iii) the adequate assurance of future performance by the Stalking Horse Bidder (each, an "<u>Assignability Objection</u>") shall, by no later than **June 30, 2023 at 4:00 p.m. (prevailing Mountain Time),** file with the Bankruptcy Court and serve its Cure Objection, Assignability Objection, and/or other objection on: (i) the Debtors' Advisors: (a) financial advisor, Dan Dooley, c/o MorrisAnderson and Associates, Ltd., 55 West Monroe St., Suite 2350, Chicago, IL 60603  (<u>DDooley@morrisanderson.com</u>); (b) Brookwood Associates, investment banker to the Debtors, 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, GA 30305, Attn: Amy Forrestal (<u>AF@brookwoodassociates.com</u>); and (c) Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203, Attn: James T. Markus (<u>jmarkus@markuswilliams.com</u>), counsel to Debtors; (ii) Office of the United States Trustee, Byron Rodgers Federal Building; 1961 Stout Street, #12-200, Denver, Colorado 80294, Robert Samuel Boughner, (<u>Samuel.Boughner@usdoj.gov</u>); (iii) Counsel to Cadence Bank senior secured lender, Morris Manning & Martin, LLP, Attn: Frank W. DeBorde, 1600 Atlanta Financial Center, 3343 Peachtree Road, NE, Atlanta, Georgia 30326 (<u>fwd@mmmlaw.com</u>) ; (iv) DLA PIPER, Attn: Richard Chesley, counsel for CKE Restaurants Holdings, Inc.;   444   West   Lake   Street,   Suite   900,   Chicago,   IL   60606

(richard.chesley@dlapiper.com); and (v) Proposed counsel to the Committee FILL IN ONCE KNOWN  (collectively, the "Notice Parties").

6.      The Bidding Procedures Order requires that the Debtors and a Counterparty that has filed a Cure Objection and/or Assignability Objection first confer in good faith to attempt to resolve the Cure Objection and/or Assignability Objection without Court intervention.  If the parties are unable to consensually resolve the Cure Objection and/or Assignability Objection prior to the commencement of the Sale Hearing, the amount to be paid or reserved with respect to such Cure Objection, the cure of any non-monetary defaults,[9] and the assignability of the Contract shall be determined by the Bankruptcy Court at the Sale Hearing provided that, a Cure Objection may, at the Debtors' discretion, after consulting with the Consultation Parties,[10] the Counterparty, and the applicable Winning Bidder, be adjourned (an "Adjourned Cure Objection") to a subsequent hearing.  An Adjourned Cure Objection may be resolved after the closing date of the applicable Transaction; provided that, the Debtors maintain a cash reserve equal to the cure amount the objecting Counterparty believes is required to cure the asserted monetary default under the applicable Contract.  Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the applicable Winning Bidder, as of the closing date of the applicable Transaction.  All objections to the potential assumption and assignment of the Debtors' right, title, and interest in, to, and under a Contract will be heard at the Sale Hearing, except with respect to an Adjourned Cure Objection as set forth herein.

7.      If a Counterparty fails to timely file with the Bankruptcy Court and serve on the Notice Parties a Cure Objection, Assignability Objection, and/or other objection the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Contract (unless such Counterparty has timely filed an Adequate Assurance Objection (as defined below) with respect to the Contract, in which case the Counterparty may only object to a Winning Bidder's or Backup Bidder's adequate assurance) to the Winning Bidder (and Backup Bidder if the Backup Bidder becomes the Winning Bidder) other than the Stalking Horse Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale.  The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Contract, or any other document, and the Counterparty to the Contract shall be deemed to have consented to the Cure Costs and forever shall be barred from asserting any other claims related to such Contract against the Debtors or any Winning Bidder(s) (including the Backup Bidder(s) to the extent any Backup Bidder becomes a Winning Bidder) or their property.

8.      In the event that the Debtors identify Counterparties that were not served with the Assumption and Assignment Notice, the Debtors may subsequently serve such Counterparty

---

[9]  All arguments with respect to whether non-monetary defaults are required to be cured are preserved.

[10]  If a Consultation Party is the party with the Cure Objection, then such party shall not be a Consultation Party with respect to matters related to its Cure Objection.

with an Assumption and Assignment Notice, and the above procedures will nevertheless apply to such Counterparty; provided, however, that the deadline to file a Cure Objection, Assignability Objection, and/or any other objections (other than an Adequate Assurance Objection, discussed below) with respect to such additional Counterparty shall be 4:00 p.m. (prevailing Mountain Time) on the date that is fourteen (14) days following service of the Assumption and Assignment Notice.

9.      Any Counterparty to a Proposed Assumed Contract that wishes to object to the potential assumption, assignment, and sale of the Proposed Assumed Contract, the subject of which objection is to the proposed form of adequate assurance of future performance provided by a Winning Bidder(s) or Backup Bidder(s) (who is not the approved Stalking Horse Bidder) with respect to such contract (each, an "Adequate Assurance Objection"), shall file with the Bankruptcy Court and serve on the Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **July 20, 2023 at 4:00 p.m. (prevailing Mountain Time)** (the "Adequate Assurance Objection Deadline").

10.     The Bidding Procedures Order requires that the Debtors and a Counterparty that has filed an Adequate Assurance Objection first confer in good faith to attempt to resolve the Adequate Assurance Objection without Bankruptcy Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance of the applicable Winning Bidder and Backup Bidder shall be determined by the Court at the Sale Hearing.

11.     If a Counterparty fails to timely file with the Court and serve on the Notice Parties an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Proposed Assumed Contract (unless the Counterparty has filed a timely Cure Objection or Assignability Objection with respect to the Proposed Assumed Contract) to the applicable Winning Bidder (and Backup Bidder if the Backup Bidder becomes the Winning Bidder) and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale.  The applicable Winning Bidder (and Backup Bidder if the Backup Bidder becomes the Winning Bidder) shall be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract in accordance with Bankruptcy Code section 365(f)(2)(B), notwithstanding anything to the contrary in the Proposed Assumed Contract, or any other document.

12.     The inclusion of a Contract or other document or Cure Costs on the Contracts Schedule 1 attached hereto or on any Proposed Assumed Contracts Notice (as defined in the Motion) (collectively, the "Contract Notices") shall NOT constitute or be deemed a determination or admission by the Debtors, the applicable Winning Bidder(s) (and Backup Bidder(s) if any Backup Bidder becomes a Winning Bidder), or any other party in interest that such Contract or other document is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved).

13.     The Debtors reserves all of their rights, claims, and causes of action with respect to each Contract or other document listed on the Contract Notices. **The Debtors' inclusion of any Contract on the Contract Notices shall not be a guarantee that such Contract ultimately will be assumed or assumed and assigned**. The Contract Notices shall be without prejudice to the Winning Bidder's rights (including any Backup Bidder's rights, if the Backup Bidder becomes the Winning Bidder), if any, under the asset purchase agreement, to subsequently exclude Proposed Assumed Contracts from the assumption or assignment prior to the closing of the Transaction.

14.     The Debtors' assumption and/or assignment of a Contract is subject to approval by the Bankruptcy Court and consummation of one or more Transactions. Absent consummation of one or more Transactions and entry of an order approving the assumption and/or assignment of the Contracts, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

15.     Copies of the Motion, Bidding Procedures, all exhibits and schedules thereto, the Bid Procedures Order, the Auction and Sale Notice, and the Contracts Schedule, and certain other documents relevant to the Sale Transaction, may be obtained by contacting the Debtors' counsel, in writing or by e-mail, at Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203; Attn: William G. Cross (wcross@markuswilliams.com). You may also obtain a copy of the Motion by visiting the Court's website at https://www.cob.uscourts.gov/ in accordance with the procedures and fees set forth therein.

5

**Exhibit 4**

**Free and Clear Sale Notice**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankr. Case No. 23-11919-MER |
| BIGHORN RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11921-MER |
| SUMMIT RESTAURANT HOLDINGS, | ) | Bankr. Case No. 23-11922-MER |
| LLC; EMPIRE RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11924-MER |
| HEARTLAND RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11925-MER |
| ATLANTIC STAR RESTAURANTS, LLC; | ) | Bankr. Case No. 23-11926-MER |
| and SUMMIT RESTAURANT | ) | |
| DEVELOPMENT, LLC | ) | **(Jointly Administered under Bankr.** |
| | ) | **Case No. 23-11919-MER)** |
| Debtor-in-Possession. | ) | |
| | ) | Chapter 11 |

### NOTICE OF SALE FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS AND RELATED BID PROCEDURES AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     On May 4, 2023, the above-captioned Debtors (the "Debtors")[11] filed with the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") a motion [Docket No. ____] (the "Motion") seeking entry of an order (i) authorizing and approving bidding procedures (the "Bidding Procedures"), to be used in connection with the disposition (the "Transaction") of substantially all of the Debtors' assets either in whole or in parts (the "Assets; (ii) scheduling an auction for the Assets (the "Auction"); (iii) scheduling a hearing to approve the Transaction (the "Sale Hearing"); (iv) authorizing certain procedures related to the Debtors' assumption and assignment of executory contracts and unexpired leases (the "Assignment Procedures") in connection with any Transaction, including notice to each non-Debtors counterparty (each, a "Counterparty") to an executory contract or unexpired lease (collectively, the "Contracts") of the Debtors' proposed cure amounts to cure all monetary defaults under the Contracts (the "Cure Costs"), if any, and notice of potential assumption and assignment of certain Contracts (collectively, the "Proposed Assumed Contracts") in connection with the Transaction; and (v) granting related relief.

2.     On _____, 2023, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ___] approving, in part, the relief requested in the Motion.

3.     Pursuant to the Bidding Procedures Order, any person or entity interested in participating in the Auction must, among other things, submit a Bid (as defined in the Bidding Procedures) for the Assets so as to be **actually received** on or before **July [10], 2023, at 5:00**

---

[11] Capitalized terms used herein but not defined herein will have the meanings ascribed such terms in the Bidding Procedures Order or Bidding Procedures.

7

p.m. (**prevailing Mountain Time**) (the "Bid Deadline") to: (i) financial advisor, Dan Dooley, c/o MorrisAnderson and Associates, Ltd., 55 West Monroe St., Suite 2350, Chicago, IL 60603 (DDooley@morrisanderson.com); and (ii) James T. Markus, Markus Williams Young & Hunsicker, LLC, counsel to Debtors (jmarkus@markuswilliams.com).

4.      If the Debtors receive two or more Qualified Bids on the same or overlapping assets (including any approved Stalking Horse Bid), the Debtors will conduct the Auction to determine the Winning Bidder with respect to the Transaction.

5.      The Auction shall take place at **10:00 a.m. (prevailing Mountain Time) on July 14, 2023**, at the offices of Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80202, or such later date and time or location as selected by the Debtors, in consultation with the Consultation Parties and subject to the consent of Cadence Bank. The Winning Bid and the Backup Bid (each as defined in the Bidding Procedures) shall be announced by the Debtors at the conclusion of the Auction.

6.      **The Sale Hearing will commence on July [21], 2023 at 10:00 a.m. (prevailing Mountain Time)** before the Honorable Michael E. Romero, United States Bankruptcy Judge, in the Bankruptcy Court located at Courtroom C, United States Custom House, 721 19th Street, Denver, Colorado 80202.  This Notice is subject to the fuller terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures.

7.      THE ASSETS SHALL BE SOLD FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS.  THE SALE ORDER WILL ALSO SEEK A FINDING THAT THE PURCHASER IS NOT LIABLE ON ANY SUCCESSOR LIABILITY THEORY FOR ANY OBLIGATIONS OF THE DEBTORS.

8.      Parties interested in receiving additional information, including, with regard to the Transaction, the Assets, the Auction, or the Bidding Procedures may make requests to counsel to the Debtors, Markus Williams Young & Hunsicker, LLC 1775 Sherman Street, Suite 1950, Denver, Colorado 80203; Attn: William G. Cross (wcross@markuswilliams.com).

9.      Copies of the Motion, Bidding Procedures, all exhibits and schedules thereto, the Bid Procedures Order, the Auction and Sale Notice, and the Contracts Schedule, and certain other documents relevant to the Sale Transaction, may be obtained by contacting the Debtors' counsel, in writing or by e-mail, at Markus Williams Young & Hunsicker, LLC 1775 Sherman Street, Suite 1950, Denver, Colorado 80203; Attn: William G. Cross (wcross@markuswilliams.com).  You may also obtain a copy of the Motion by visiting the Court's website at https://www.cob.uscourts.gov/ in accordance with the procedures and fees set forth therein.